### INTERNATIONAL RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 12, 1916.)

#### No. 21.

1. RAILROADS 🗝229—REGULATION—SAFETY APPLIANCE ACT—APPLICATION.
   Railway Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531, as amended by Act March 2, 1903, c. 976, 32 Stat. 943 (Comp. St. 1913, §§ 8605–8615), which declares it unlawful for an interstate railroad to haul or permit to be hauled or used any car not equipped with automatic couplers, excepting those used on street railways, applies to the hauling of an ordinary freight car by an electric locomotive on an interstate interurban railway.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. 🗝229.]

2. RAILROADS 🗝229—REGULATION—SAFETY APPLIANCE ACT—CONSTRUCTION.
   The Railway Safety Appliance Act, while in form penal, is remedial in its purpose, and will not be construed with absolute strictness, but will be given such construction as will effectuate its avowed purpose of protecting the employés and the public, and its spirit and not its letter will be followed.

   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. 🗝229.]

3. RAILROADS ☜229—REGULATION—SAFETY APPLIANCE ACT—TROLLEY CARS.

Under Railway Safety Appliance Act, § 2, as amended by Act March 2, 1903, c. 976, 32 Stat. 943, making it unlawful for an interstate railroad to haul or permit to be hauled or used any cars not equipped with automatic couplers, excepting those which are used upon street railways, it is not necessary that trolley cars used on an electric railway between two cities in different states be equipped with automatic couplers, where they run singly; but they must be so equipped if they are run coupled together, though each runs by the power of its own motor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. ☜229.]

4. STATUTES ☜181(2)—CONSTRUCTION—ABSURDITY.

One of the surest tests of statutory construction is whether the interpretation contended for will render the statute ridiculous.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 259, 263; Dec. Dig. ☜181(2).]

In Error to the District Court of the United States for the Western District of New York.

Action by the United States against the International Railway Company to recover penalties for violation of Safety Appliance Act March 2, 1893, as amended by Act March 2, 1903. Judgment for the United States, and defendant brings error. Judgment affirmed, on condition that the United States enter a remittitur of a part thereof; otherwise, reversed, and new trial awarded.

Under nine causes of action the United States alleged and proved: (1) That the railway company moved two cars fastened together, between Lockport and North Tonawanda, N. Y., when neither car was equipped with an automatic coupler; (2) that it moved between the same points a freight car belonging to the Erie Railway having an automatic coupler, which at the time of transport was out of repair and inoperative; and (3) that at divers times, between the same points and over the same line of rails, it moved various single cars, none of which was fitted with automatic couplers. The method of propulsion in every case was electricity operating through an overhead trolley on a motor in the several cars, except in the case of the Erie freight car, which was hauled by an electric motor. All these car movements were admittedly in the transaction of interstate commerce, because the traffic passed over the tracks of the Erie Railroad between the two cities above mentioned, and tickets to and from extrastate points were received for passage on each and every of the cars (except the freight car) referred to in the pleadings, and passengers so entering on or completing interstate passage were on board at the time of the conditions above referred to.

The International Railway is what is technically known under New York statutes as a "street railroad," but had a chartered right to operate, and did operate, this section of the Erie track between North Tonawanda and Lockport. No steam locomotive moved on that stretch of track under the arrangements between the defendant and the Erie Company. The principal business of the International Company is to own or operate a considerable system of city and suburban transport, extending from Buffalo to Lockport and Niagara Falls, and into Canada. Within the city limits of North Tonawanda and Lockport, at some seasons of the year, trains which have run or intend to run over the Erie track aforesaid stop in the usual manner at street corners to take up passengers. On the country run they stop at appointed stations. The trains or cars complained of operated on a regular schedule, but (with the exception of the Erie freight car aforesaid) whenever one car was fastened to another, each car was driven by its own motor, each taking power from the

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

overhead trolley. With the exception of said freight car, all the cars complained of were of a type well known and habitually used in the city as well as suburban traffic. They were rather heavy "trolley cars."

The trial court directed a verdict in favor of the United States for $100 on each cause of action.

Edward E. Franchot, of Niagara Falls, N. Y., for plaintiff in error.
Stephen T. Lockwood, U. S. Atty., of Buffalo, N. Y.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The second section of the statute sued upon declares it to be unlawful for any common carrier engaged in interstate commerce by railroad "to haul, or permit to be hauled or used on its line, any car used in moving interstate traffic not equipped with" couplers, that engage each other "automatically by impact," and can be uncoupled "without the necessity of men going between the ends of the cars." The amendment of 1903 declares that the foregoing regulation applies to all cars used on any railroad engaged in interstate commerce "excepting those * * * cars * * * which are used upon street railways"—with other exceptions not pertinent to this cause. That the act of hauling a freight car in interstate commerce, with a locomotive of any type and with its coupler inoperative, exposed the railway to the statutory penalty, is so plain that we pass the incident of the Erie freight car without comment.

[2] The Safety Appliance Act is in form penal, but it is settled that, since the primary object of the legislation "was to promote the public welfare by securing the safety of employés and travelers, and it was in that respect remedial, * * * and the design to give relief was more dominant than to inflict punishment," and that "the act might well be held to fall within the rule applicable to statutes to prevent fraud upon the revenue, and for the collection of customs, that rule not requiring absolute strictness of construction." Johnson v. Southern Pacific Co., 196 U. S. 17, 25 Sup. Ct. 161, 49 L. Ed. 363. These words were used when the court held the statute was not satisfied by the use of a coupler that fastened by impact with another of its own kind, but required manual aid when sought to be joined with one of another sort. Yet the device condemned obviously came within the letter of the statutory language, for it could and did act in the statutory manner, under the expected conditions of use, and did couple by impact.

In Pennell v. Philadelphia & Reading Ry., 231 U. S. 675, 34 Sup. Ct. 220, 58 L. Ed. 430, it was held that a tender need have an automatic coupler only at the end where cars were to be fastened thereto, because the act and its lawful interpretation by the Interstate Commerce Commission required couplers "where danger might be incurred by the employés." 231 U. S. page 680, 34 Sup. Ct. 222 (58 L. Ed. 430). Yet tenders are specifically enumerated in the act, and they do and must couple at both ends. Without extending citations (as might be done) the foregoing is enough to show that the construction of these statutes has been most benevolent, looking carefully to ascer-

tain whether the particular thing complained of came within the mischief of the act.

No decision could more amply illustrate this method of viewing and construing the law, and none more fully demonstrate its propriety, than the case solely relied upon by the plaintiff below—Spokane, etc., R. R. v. United States, 241 U. S. 344, 33 Sup. Ct. 668, 60 L. Ed. 1037. There as here, the railway company operated lines partly on the streets of two cities, but between them lay a stretch of country track. Trains—i. e., aggregations of cars drawn by the same engine (United States v. Boston & Maine R. R. [D. C.] 168 Fed. 148)—were regularly operated between these cities, composed of cars automatically coupled, but cars without automatic couplers, and ordinarily used only within the cities, were, owing to pressure of traffic, and on the day complained of, attached to a train bound from one city to the other. See the case below, 210 Fed. at page 245, 127 C. C. A. 61.

Obviously the word "used," in the proviso relating to street railways, is wide enough to cover any use however temporary, if the act is to be literally construed, with the result that by using a car, perhaps only occasionally, on a stretch of street track, it would thereby acquire license to travel over any length of extraurban lines without the appliances required by statute. But the court held (241 U. S. 350, 33 Sup. Ct. 668 [60 L. Ed. 1037]) that, since the object of the law was to secure safety to employés, such construction must be wrong, because it would "destroy the remedial processes intended to be accomplished by the enactment." Wherefore it was held that the proviso exempted street railway cars only when used on street railways, and not when not so used. Thus it is seen how sedulously the intent of Congress in enacting the statute, and therefore the intent of the act, has been pursued in its exposition and application. The spirit rather than the letter has been followed, in accordance with the "universal rule * * * that the intent of the law, if it can be clearly ascertained, shall prevail over the letter, and this is especially true where the precise words, if construed in their ordinary sense, would lead to manifest injustice." Lionberger v. Rowse, 9 Wall. 475, 19 L. Ed. 721.

[3] The scope of this statute is so wide, and the subject regulated takes such protean forms, that in the decisions under it herein cited, and many others, the application of the act has always been governed by the intent of the law itself. And for this it is not necessary to have recourse to anything outside the printed page, for the title of the act (as has often been pointed out) declared that the intent of the Legislature was "to promote the safety of employés and travelers upon railroads by compelling common carriers * * * to equip their cars with automatic couplers," etc. It is quite impossible to imagine that the safety of any one is secured or advanced by the existence of an automatic or other coupler upon a car that is not fastened to anything, and there is certainly nothing in the evidence at bar to suggest that the dominant remedial intent of the statute is attained or advanced by the presence or absence of any coupler on independently operated trolleys.

[4] There are few surer tests in statutory construction than to observe whether the interpretation contended for exposes the statute itself to ridicule; and to find in this act a requirement that all of the numerous trolleys daily operating singly from one village to another, and crossing state lines in so doing, must carry useless automatic couplers, is absurdity itself, and the argument must go to this extent. To avoid such result it is not necessary to depend on such cases as Riggs v. Palmer, 115 N. Y. 509, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819, and Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, for it seems to us that a fair reading of section 2, which renders it unlawful for improperly equipped cars "to be hauled or used" on any line engaged in interstate commerce, shows (as does the title of the act) that the mischief intended to be reached consisted in using cars that were to be hauled, and not to vehicles self-propelled, and neither hauled by any other vehicle, nor themselves engaged in hauling. We are therefore of opinion that a verdict should not have been directed against the defendant below in respect of those trolley cars operating singly at the time of the alleged offense, and not shown to be used in trains.

But when such cars are coupled together, and, so coupled, engage in interstate commerce, they are in our opinion within the purview of the statute. The degree of danger attending the coupling of such cars, the difficulty of arranging a proper automatic system, and the amount of hauling done when each car takes power through its own trolley, are not matters for the court. We hold no more than that singly operated cars, not used in trains, nor hauled, are not to be held to the requirement of automatic couplers, for the reason (summarily stated) that there would be no use for such a contrivance if it existed, and that Congress can be held to have decreed no such absurdity.

If within ten days after the filing of the mandate herein the plaintiff below enters a remittitur of $600 of the judgment entered, such reduced judgment will be affirmed, without costs in this court. If such remittitur be not filed, the judgment is reversed, and a new trial awarded.

&wkey;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes