**ECHOLS v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 9441.**

Circuit Court of Appeals, Eighth Circuit.

Aug. 20, 1932.

Fadjo Cravens, of Fort Smith, Ark., for petitioner.

Hayner N. Larson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Maxwell M. Mahany, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE, KENYON, and VAN VALKENBURGH, Circuit Judges.

KENYON, Circuit Judge.

Petitioner in the year 1924 purchased $5,500 worth of stock in the Pine Mountain Coal Company. In 1927, the corporation was liquidated by bankruptcy proceedings. The proceeds of the assets were insufficient to pay the corporation debts, and nothing was distributed to any of the stockholders as the result of the liquidation. Petitioner in his income tax return for the year 1927 treated this loss as a capital loss, and as he had realized capital gains on sales of stock during that year he sought to deduct said loss from his capital gain instead of claiming it as an ordinary loss.

The Board of Tax Appeals held that the loss was not a capital loss under section 208 (a) (2) of the Revenue Act of 1926 (26 USCA § 939 note), and found there was a deficiency in the income tax for the calendar year 1927 of $579.10.

Petitioner asks for a review of this decision.

Section 208 (a) (2) is as follows:

"(a) For the purposes of this chapter

* * *

"(2) The term 'capital loss' means deductible loss resulting from the sale or exchange of capital assets."

It is clear that petitioner's loss does not come under the term "capital loss" as defined by this section, for there was no "sale or exchange" of capital assets as the words "sale or exchange" are commonly used and understood, and there is no reason to construe them in any other way. Burkett v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 667. Petitioner does not assert otherwise, but insists that section 208 (a) (2), supra, must be read in connection with section 201 (c) of the same act (26 USCA § 932 (c), which is as follows: "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203."

The purpose of its enactment seems to have been to assist in the administration of the act as the character of distributions therein provided was not covered in prior acts.

The argument of petitioner is that the court must so construe section 201 (c) as to cover the present situation and should hold that under said section the liquidation of the corporation is to be considered as a sale or exchange of the stock. This section refers only to *amounts distributed* in complete or partial liquidation of a corporation and does not provide that the liquidation is payment in exchange for the stock, but that the *amounts distributed* shall be treated as in payment in exchange for the stock, etc.

The language of these two sections is plain, and if they be read literally it is clear that if there is no amount distributed in the liquidation there is nothing that can be treated as part or full payment in exchange for the stock, and hence as there is no sale or exchange of capital assets the loss cannot be brought under the term "capital loss" as defined in section 208 (a) (2), supra.

Petitioner's theory is that such could not have been the intent of Congress; that unless section 201 (c) is construed to cover a situation where there is no distribution of any amount to stockholders upon liquidation of a corporation it leads to a ridiculous and unjust result which counsel for petitioner states in his brief as follows: "Clearly, the object of Congress was to permit a deduction for a capital loss. Such a loss under the statutes can be sustained in no other way than by a sale, exchange or liquidation. To say that a stockholder in a corporation has not suffered a capital loss on stock, although nothing has been distributed to him on the stock, and that another stockholder in another corporation has sustained a capital loss, by reason of having received some minute amount in distribution on his stock, is a too ridiculous and absurd intention to be imputed to any legislative body. To arrive at such a conclusion and thus sustain the respondent's contention, it is necessary to ignore the object of Congress in passing section 201 (c), and is to permit the mere literal meaning of the words used to prevail over the obvious intent of Congress, and results in ridiculous and unjust results."

Of course courts should construe statutes so as to avoid absurdity or injustice if it can be done under the language employed, but if the intention of the legislative body clearly appear from the plain words of the act the presumption is that such body has said what it meant and intended. If it has not, the remedy is to change the law by legislative act and not to attempt to change it by court decision. This court has many times expressed its disapproval of any judicial journeys into the field of legislation by construction of statutes. We refer to some of its opinions:

In Union Cent. Life Ins. Co. v. Champlin (C. C. A.) 116 F. 858, 860, it said: "The courts may not import into a plain and unambiguous law and give effect to a supposed intention or purpose of the legislative body which is neither expressed nor indicated in the act. Such a course of action would pass beyond the limits of construction or interpretation into the forbidden domain of judicial legislation."

In Swarts v. Siegel (C. C. A.) 117 F. 13, 18, 19: "Attempted judicial construction of the unequivocal language of a statute or of a contract serves only to create doubt and to confuse the judgment. There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expresses, and no room is left for construction."

In United States v. Colorado & N. W. R. Co. (C. C. A.) 157 F. 321, 324, 15 L. R. A. (N. S.) 167, 13 Ann. Cas. 893: "But construction and interpretation have no place or function where the terms of the statute are clear and certain, and its meaning is plain."

In Wabash R. Co. v. United States (C. C. A.) 178 F. 5, 11, 12, 21 Ann. Cas. 819: "And it is the intention expressed in the statute, and that alone, to which the courts may lawfully give effect. They may not assume or presume purposes and intentions that the terms of the law do not indicate, and then enact and expunge provisions to carry out those supposed intentions. The act must be held to mean what it clearly expresses."

See, also, United States v. Ninety-Nine Diamonds (C. C. A.) 139 F. 961, 2 L. R. A. (N. S.) 185; United States v. Alamogordo Lumber Co. (C. C. A.) 202 F. 700; United States v. Missouri Pac. Ry. Co. (C. C. A.) 213 F. 169; Soliss v. General Electric Co. (C. C. A.) 213 F. 204; Eclipse Lumber Co. v. Iowa Loan & Trust Co. et al. (C. C. A.) 38 F.(2d) 608; United States v. Chicago, St. P., M. & O. Ry. Co. (C. C. A.) 43 F.(2d) 300, 71 A. L. R. 507.

In Fidelity Nat. Bank & Trust Co. of Kansas City, Mo., v. Commissioner of Internal Revenue (C. C. A.) 39 F.(2d) 58, 61, this court approved the canon of statutory construction, "that where the meaning is not perfectly clear from the words used, a reasonable construction should be given which will carry out the object and purpose of the statute."

From the Supreme Court of the United States we quote:

Caminetti v. United States, 242 U. S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168:

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms. * * *

"Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion."

There are a few cases on this subject which might tend to support petitioner's theory in that the literal meaning of the statute was disregarded. We may group the principal ones as: Church of the Holy Trinity v. United States, 143 U. S. 457, 12 S. Ct. 511, 512, 36 L. Ed. 226; Fleischmann Construction Co. et al. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624; United States v. Katz et al., 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986; International Ry.

Co. v. United States (C. C. A.) 238 F. 317.

The leading case on this point undoubtedly is the much quoted one of Church of the Holy Trinity v. United States. It involved the construction of an act of Congress making it unlawful for a person or corporation to prepay the transportation of aliens into the United States under a contract or agreement made prior to such migration to perform labor or service of any kind in the United States, etc. Trinity Church made a contract with an Englishman to serve as its rector. The Supreme Court held this contract to be without the scope of the statute. It pointed out that the act of the corporation was within the letter of the section as the relationship of a rector to the church implied labor on his part and compensation on the other, but said: "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." In Fleischmann Const. Co. v. United States, 270 U. S. 349, 360, 46 S. Ct. 284, 289, 70 L. Ed. 624, the Supreme Court said: "The strict letter of an act must, however, yield to its evident spirit and purpose, when this is necessary to give effect to the intent of Congress. * * * And unjust or absurd consequences are, if possible, to be avoided." In United States v. Katz, 271 U. S. 354, 46 S. Ct. 513, 514, 70 L. Ed. 986, a case in which the United States was prosecuting a bootlegger for failing to keep records of his transactions as required of persons dealing in intoxicating liquors, the court said: "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose." In International Ry. Co. v. United States (C. C. A.) 238 F. 317, 321, the court said: "There are few surer tests in statutory construction than to observe whether the interpretation contended for exposes the statute itself to ridicule."

In each of these cases it is to be noted that the literal meaning of the statute involved was disregarded for the purpose of cutting down the scope of the same, which doctrine it is clear involves less danger of judicial legislation than does the disregarding of a strictly literal interpretation for the purpose of extending the scope of a statute. All that the court was doing in these cases was to enforce what was the clearly expressed intention of the legislative body, and refusing to enforce that which the court was

certain was not intended by said legislative body to be enacted. That presents quite a different situation from extending the meaning of a statute by judicial construction to cover what a court might suppose Congress did intend or should have intended. The case of Commissioner of Immigration v. Gottlieb, 265 U. S. 310, 313, 314, 44 S. Ct. 528, 68 L. Ed. 1031, bears strongly on the instant case. That case, as the court points out, was one of great hardship, involving the deportation of a wife and infant son of a Jewish rabbi. It was strongly urged that a construction of the statute which would exclude them led to absurd results. The court said: "The case, as the evidence shows, is one of peculiar and distressing hardship, and it is not unnatural that any appropriate canon of construction should be laid hold of to justify a conclusion favorable to the respondents. But if the plain words of the statute are against such a conclusion, leaving no room for construction, the courts have no choice but to follow it, without regard to the consequences."

Probably all that is necessary to be said on the question of departure from the letter of an act of Congress because leading to absurd results is said in Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 50, 75 L. Ed. 156, where the court, referring to Holy Trinity Church v. United States, supra, said: "But a consideration of what is there said will disclose that the principle is to be applied to override the literal terms of a statute only under rare and exceptional circumstances. The illustrative cases cited in the opinion demonstrate that, to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense. * * * It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the lawmaker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts." The court further points out that it is dealing with a taxing act "with regard to which the general rule requiring adherence to the letter applies with peculiar strictness."

We may well inquire: What are the absurd consequences that result from the construction given to section 201 (c) by the Board of Tax Appeals? While under the particular situation here as to the facts there may be some hardship upon petitioner, yet in other cases the statute may operate to the taxpayers' advantage, depending upon the amount of income subject to the tax. So the absurdity could not be considered in any event "so gross as to shock the general moral or common sense."

We feel it unnecessary to consider the question argued by appellee as to administrative interpretations of somewhat related acts, for we are well satisfied that there is no ambiguity whatever in this section. However we may say that the Departmental Regulations have uniformly treated such losses as were sustained by petitioner deductible as ordinary losses.

The words of the statute in question here are plain, the language is unambiguous, and indicates clearly that section 201 (c), supra, applies only where there is an actual distribution to stockholders in the liquidation of a corporation no matter how that liquidation is brought about. Why should a court say that Congress intended something different from what the plain meaning of the words shows its intention to be, even if the same result in some hardship or absurdity? There is nothing in the record aside from the statute itself to show the intention of the framers of the legislation. Petitioner offers no such proof. He offers only the conjecture that had the matter been brought to the attention of Congress it would not have been willing to leave such persons as petitioner without the scope of the legislation. For the court to assume such intention and to construe section 201 (c) to cover the situation here presented would go far into the domain of judicial legislation.

The petition for review is denied, and the order of the Board of Tax Appeals affirmed.