The **BALTIMORE AND OHIO RAIL-
ROAD COMPANY**, Appellant,

v.

Daniel T. **JACKSON**, Appellee.

No. 13013.

United States Court of Appeals
District of Columbia Circuit.

Argued April 24, 1956.

Decided June 7, 1956.

Mr. Laidler B. Mackall, Washington, D. C., with whom Mr. George B. Mickum, III, Washington, D. C., was on the brief, for appellant.

Mr. Milford J. Meyer, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of Court, with whom Mr. Irving L. Chasen, Washington, D. C., was on the brief, for appellee. Mr. Irving A. Levine, Washington, D. C., also entered an appearance for appellee.

Before PRETTYMAN, DANAHER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

A jury verdict was rendered in favor of appellee in an action under the Federal Employers' Liability Act [1] for damages for personal injuries sustained in the course of his employment with The Baltimore and Ohio Railroad Company.

Appellee was injured in the derailment of a four-wheel motor track car which was then towing a four-wheel push truck along railroad tracks. The push truck weighed about 800 pounds empty and with the tools it was then carrying weighed about 1,200 pounds. There was no brake or motive power on the push truck. The motor track car was slightly heavier than the empty push truck and was equipped with a hand brake. While passing through a railroad station, the car struck a large dog; the impact derailed the car and appellee was thrown into a ditch and injured.

Appellee brought suit against the railroad under the Federal Employers' Liability Act, supra, alleging two causes of action. The first cause of action was based on the negligence of appellant in directing appellee to operate a motor track car and push truck without sufficient braking power, and in requiring appellee to pull the push truck over wet, slippery rails when the truck was not equipped with brakes. The second cause of action alleged that appellee's injuries were proximately caused by appellant's violations of the Safety Appliance Act [2] and the Boiler Inspection Act [3]—specifically, in that (a) the motor car was not equipped with a power driving-wheel brake (air brake), (b) the push truck was not equipped with any brakes, and (c) appellant had directed appellee to operate a car and truck without sufficient braking power.

The court below ruled and charged the jury that the provisions of the Safety Appliance Act were applicable to

1. 35 Stat. 65 (1908), 45 U.S.C.A. §§ 51–60.

2. 27 Stat. 531 (1893), 32 Stat. 943 (1903), 36 Stat. 298 (1910), 45 U.S.C.A. §§ 1–16.

3. 36 Stat. 913 (1911), 38 Stat. 1192 (1915), 43 Stat. 659 (1924), 45 U.S.C.A. § 23.

the vehicles in question. The issues on both causes of action were submitted to the jury, which found in favor of the appellee on "the issues aforesaid." This appeal is directed only to that part of the judgment which was based on the second cause of action.[4] Appellant contends: (1) the vehicles in question were not subject to the Safety Appliance Act and (2) appellee did not make a sufficient showing to go to the jury on the issue of whether the absence of the appliances allegedly required by the Safety Appliance Act was a proximate cause of the accident.

■ With respect to the first issue, appellant argues that the vehicles in question are exempt from the requirements of the Safety Appliance Act because of the proviso of § 6:[5]

"*Provided,* That nothing in sections 1–7 of this title shall apply to trains composed of four-wheel cars or to trains composed of eight-wheel standard logging cars where the height of such car from top of rail to center of coupling does not exceed twenty-five inches, or to locomotives used in hauling such trains when such cars or locomotives are exclusively used for the transportation of logs."

Both vehicles involved *were* four-wheel cars, one powered and braked, one with neither power nor brakes.

Appellee contends the exemption in § 6 refers only to *logging cars,* and in support of this argument cites the decisions in Spokane & Inland Empire R. Co. v. United States, 1916, 241 U.S. 344, 36 S. Ct. 668, 60 L.Ed. 1037; Hoffman v. New York, N. H. & H. R. Co., 2 Cir., 1934,

74 F.2d 227, certiorari denied, 1935, 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248; Martin v. Johnston, Fla., 79 So.2d 419, certiorari denied, 1955, 350 U.S. 835, 76 S.Ct. 71. Appellant, however, correctly points to the fact that the statute as originally enacted simply said "*Provided,* That nothing in this act contained shall apply to trains composed of four-wheel cars or to locomotives used in hauling such trains." 27 Stat. 532 (1893). The legislative history (discussed *infra*) shows that this provision was directed in its enactment specifically to exempt *coal cars.* 24 Cong.Rec. 1477 (1893). Subsequently, in 1896, the proviso was amended to include "eight-wheel standard logging cars." 29 Stat. 85 (1896). The legislative history indicates that the proviso was amended because standard logging cars were only eight-wheeled. H.R. Rep.No.727, 54th Cong., 1st Sess. (1896).

The cases cited by appellee on this point are not helpful. In Hoffman v. New York, N. H. & H. R. Co., supra, the court merely stated, without elaboration or explanation, that the exceptions in § 6 are limited to logging trains. In Spokane & Inland Empire R. Co. v. United States, supra, the Supreme Court referred to the § 6 exemption, again without discussion, as if it covered only logging trains.[6] In Martin v. Johnston, supra, the court made no reference whatsoever to the applicability of § 6.

Although we do not believe the four-wheel car exemption in § 6 can be interpreted to apply solely to logging cars,[7] we do feel the legislative history demonstrates that Congress intended the four-wheel car exemption to be restricted to coal cars. The four-wheel car exemption was enacted in 1893 as part of the orig-

---

4. Since the jury's determination does not reveal whether they found for plaintiff on both or simply one cause, error found on this appeal would call for a new trial, without any appeal as to the first cause of action.

5. 27 Stat. 532 (1893), 29 Stat. 85 (1896), 62 Stat. 909 (1948), 45 U.S.C.A. § 6.

6. This case was concerned only with the street railway train exemption of § 8, 32 Stat. 943 (1903), 45 U.S.C.A. § 8.

7. United States v. St. Louis-San Francisco Ry., No. 5522, District Court for the Eastern Division of Mo., May 11, 1922 (unreported).

inal Safety Appliance Act. The exemption was offered as an amendment to the original bill (H.R. 9350). The Senator offering the amendment stated:

"Mr. Blodgett. I desire to offer an amendment. At the end of section 6 of the bill as reprinted I move to add the following proviso:

"*Provided*, That nothing in this act contained shall apply to trains composed of four-wheel cars or to locomotives used in hauling such trains.

"The Presiding Officer. The question is on agreeing to the amendment proposed by the Senator from New Jersey [Mr. Blodgett] to the amendment of the committee.

"Mr. Blodgett. Mr. President, I presume most Senators understand that coal from the mines is transported to the seaboard in four-wheel cars. The custom is to run such cars to the junction points of lateral roads and from those junction points to the mines where they are loaded. The four-wheel cars are used, because it would be practically impossible to run an eight-wheel car to the mines over the sharp grades and around the sharp curves necessary in reaching the mines. The coupling construction is a peculiar one, and is adapted to that peculiar work. A hook arrangement and link are used with considerable lost motion between the cars.

"It is necessary to use that appliance, as I said, in order to go around the sharp curves. *I believe it would be practically impossible to place the train brake and automatic coupler upon cars such as are used in that* traffic, and if the bill is not amended as I propose, it will compel a reshipment of coal at all the junction points on the lateral roads to the main stem. I do not know that the cars containing but four wheels are used in any other service in the country except the coal service. Hence, I think the amendment is a very proper one.

"Mr. Cullom. I have had some conversation with the Senator from New Jersey in reference to his amendment, and he being much more familiar with the general subject of running the four-wheel cars than I, I am inclined to think perhaps his amendment is correct. I shall make no opposition to it myself. I have no objection to its adoption.

"Mr. Stockbridge. Let the amendment be read.

"The Secretary read Mr. Blodgett's amendment to the amendment of the committee.

"Mr. Stockbridge. That is all right.

"The amendment to the amendment was agreed to. [Italics supplied.]" (24 Cong.Rec. 1477 (1893).)

We do not believe we can ignore such a clear and compelling statement as to the intent of the proviso.[8] To hold otherwise would require us to say that a railroad could run entire trains of four-wheel maintenance and supply cars drawn by a powered tractor, also having four wheels, and disregard the admitted fact (J. A. 69–70) that unbraked vehicles behind the powered tractor extend the distance required to stop the train, thus ex-

8. As the Supreme Court said in United States v. American Trucking Ass'n, 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345, "Frequently, however, even when the plain meaning [of a statute] did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'"

posing employees to substantially increased hazards.

■ Our conclusion is further reinforced by the fact that if the four-wheel car exemption is interpreted to cover all four-wheel cars, this means a four-wheel motor track car like the one appellee was driving need not even be equipped with hand brakes as required by § 11 [9] of the act, even though that car might be driven along a slippery railroad track at 20 m. p. h. We do not believe Congress intended such a result when it provided in § 11 that "all cars must be equipped with * * * efficient hand brakes." 36 Stat. 298 (1910), 45 U.S.C.A. § 11. The long-established command to interpret this act liberally to accomplish its declared objective, the safety of persons and trains,[10] no doubt guided the trial court, and we think correctly so.

We are aware that when the logging-car exemption was added in 1896 the House Report [11] stated, in referring to the original four-wheel exemption:

"In the original act of March 2, 1893, there is a provision at the end of section 6 which exempts trains composed of four-wheeled cars from the operations of the act. This was evidently intended to apply to logging trains, but it happens that the cars are of eight wheels and do not come within the exception."

Obviously, the draftsman of this 1896 report failed to read the 1893 legislative history for there is no support for the House Report's conclusion and we must view the statement in the 1896 House Report as one Congress' erroneous *post* legislative view of the intent of a prior Congress.

■ Appellant also argues that the motor track car in question is not covered by the act's § 1 [12] requirement for air brakes and a train brake system (brakes on all cars which can be controlled from locomotive) because the car is not used to haul *standard railroad cars* and is, therefore, not a locomotive.

We find nothing in the authorities cited by appellant which leads to a conclusion that a vehicle is a "locomotive" only if it is actually used to haul standard railroad cars. In United States v. Fort Worth & Denver City R. Co., D.C. N.D.Tex.1937, 21 F.Supp. 916, the court held that a locomotive crane which was used to haul three other cars was a locomotive within the meaning of § 1 of the Safety Appliance Act. The court stated at page 918:

"* * * In other words, while the equipment is being used as a

---

9. Although the § 6 exemption is not referred to in § 11 of the act, § 16 provides:

"§ 16. Application of provisions to common carriers and vehicles subject to 'Safety Appliance Acts.'

"The provisions of sections 11–16 of this title, as to the equipment of cars with the designated safety appliances apply to every common carrier and every vehicle subject to what are commonly known as the 'Safety Appliance Acts' set out in sections 1–10 of this title." 36 Stat. 298 (1910), 45 U.S.C.A. § 16.

Since a four-wheel car is exempt from §§ 1–10 of the act, it would seem to be exempt from § 11.

10. Lilly v. Grand Trunk Western R. Co., 1943, 317 U.S. 481, 486, 63 S.Ct. 347, 87 L.Ed. 411; Brady v. Terminal R. Ass'n, 1938, 303 U.S. 10, 15, 58 S.Ct. 426, 82 L.Ed. 614; New York Central R. Co. v. United States, 1924, 265 U.S. 41, 44–45, 44 S.Ct. 436, 68 L.Ed. 892.

11. H.R.Rep. No. 727, 54th Cong., 1st Sess. (1896).

12. This section provides in pertinent part: "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system * * *." 27 Stat. 531 (1893), 45 U.S.C.A. § 1.

crane, and *moved* about at the scene of construction, it is still a crane and does not become a locomotive, but where, as here, it is used to haul cars for a distance up to two and one-half miles from a switch to the scene of construction, it is being used for the purposes for which a locomotive is used and is a locomotive within the meaning of the statute. While the equipment is being used as a locomotive, it is a locomotive, regardless of whatever else it might also be."

The court in Hoffman v. New York, N. H. & H. R. Co., supra, held that a gasoline tractor which was hauling a hand car was a locomotive within the meaning of 45 U.S.C.A. §§ 1, 2.[13]

■ The I. C. C. order of December 14, 1925,[14] providing

"A locomotive is a self-propelled unit of equipment designed solely for moving other equipment.

"A motor car is a self-propelled unit of equipment designed to carry freight or passenger traffic, and is not to be considered a locomotive."

is a classification which cannot control the courts in this situation. That definition is for purposes other than those we must deal with here. Since the *motor* track car in the instant case was being used to move other equipment, the I. C. C. order does not preclude a conclusion, on the facts of this case, that the car was then a locomotive even though it was not designed *solely* for moving other equipment.

In the present case the motor track car was being used to haul another car,

i. e., it was functioning as a locomotive and was, therefore, a locomotive within the meaning of the Act. Its actual use controls over its name.

■ Appellant's second contention is that appellee failed to carry the burden of proving that the absence of the type of brakes allegedly required by the Safety Appliance Act was a proximate cause of the accident.

Appellee testified that if he had been driving the motor car alone without the truck, he could have stopped in about six to eight feet. Mr. Chrissinger, the Railroad's brake expert, testified that if the existing brakes lock [15] the wheels, the efficiency of the brakes would not be increased by increasing the brake power. Since this testimony was uncontradicted, it is suggested that air brakes would not have helped in any way to prevent the accident. However, this expert, on cross-examination, conceded that any unbraked portion of equipment behind the motored unit adds to the stopping distance of the entire train. Thus, the jury might reasonably find from the testimony that although air brakes on the motor car would not have been more efficient than the present brakes, the train, consisting of the motor car and push truck, would have stopped sooner if the push truck had been equipped with brakes controlled from the motor car (a train brake system)—i. e., that appellee either could have stopped before hitting the dog or could have slowed down sufficiently so that the impact would not have derailed the car.[16]

Affirmed.

13. We do not believe the court based its decision solely on the fact that the "gasoline engine was frequently used to haul a long line of cars". 74 F.2d at page 232.

14. In the Matter of Rules and Instructions for the Inspection and Testing of Locomotives Propelled by Other Than Steam Power in Accordance With the Act of February 17, 1911, Amended March 4, 1915, June 26, 1918, and June 7, 1924.

15. Appellee had testified that the brakes did lock the wheels of the motor car.

16. It is sufficient under the Federal Employers' Liability Act that the injury result *in part* from defendant's negligence. 35 Stat. 65 (1908), 45 U.S.C.A. § 51; Schulz v. Pennsylvania R. Co., 1956, 350 U.S. 523, 526, 76 S.Ct. 608; Coray v. Southern Pacific Co., 1949, 335 U.S. 520, 524, 69 S.Ct. 275, 93 L.Ed. 208.