**Roan DIXON, Appellant,**

v.

**VIRGINIAN RAILWAY COMPANY, a** corporation, Appellee.

No. 7493.

United States Court of Appeals Fourth Circuit.

Argued Oct. 24, 1957.

Decided Nov. 13, 1957.

Louis B. Fine, Norfolk, Va. (Howard I. Legum, Norfolk, Va., on the brief), for appellant.

Leigh D. Williams, Norfolk, Va. (Williams, Cocke, Worrell & Kelly, Norfolk, Va., on the brief), for appellee.

Before SOPER, SOBELOFF and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

The plaintiff, Dixon, was hit in the arm by a hook attached to a steel cable with which he and another employee of the Railway were attempting to move a boxcar. He filed suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. After all of the testimony had been taken, the plaintiff moved for peremptory instructions that the Railway was guilty of negligence which was the proximate cause of the injury and that the plaintiff had not been contributorily negligent. These motions were denied, and the issues of negligence and contributory negligence were submitted to the jury. The jury brought in a verdict for the defendant. This appeal is from the judgment entered on the verdict.

The evidence showed that the plaintiff, who had been employed for some time as a laborer in the car repair shop of the Railway, and one Seaborn, a fork lift truck driver, were sent to open and unload a boxcar containing supplies for the shop. They thought the unloading of the car would be facilitated by moving the car a few feet. While various tools were available for this purpose, they decided to attach a ⅝ths inch steel cable having a ¾ths inch hook at either end to the fork truck and to the boxcar and thus to move the car with the motive power of the fork truck, pulling on the ground outside of the crossties. They had moved cars short distances by this procedure and with the same equipment on many previous occasions.

The plaintiff set the hook at the end of the cable into a recess in one of the trucks of the boxcar. Seaborn started the fork truck, and, to facilitate the movement of the boxcar, gave it a "jerk." The hook slipped or came out, bent partially open by the force, and it, or the clips by which it was fastened to the cable, hit the plaintiff's arm.

So much is substantially uncontradicted, but beyond that the testimony was sharply conflicting.

There was testimony that the hook was too light for the purpose and was intended for use in opening the doors of boxcars. There was testimony that larger hooks were available, that the plaintiff himself selected this one and had used it successfully on many occasions in moving boxcars. There was also testimony that the safer procedure was to take up gently the slack in the cable, not to jerk the boxcar, though Seaborn testified that to give the car a slight jerk is the usual and necessary procedure.

There was testimony which, if believed by the jury, would have permitted it to find that the hook was placed by the plaintiff in a shallow recess in the truck of the boxcar so that all of the force was applied to the point of the hook, its weakest part, rather than in the curve of the hook and that, had it been properly placed by the plaintiff, it would have

neither opened nor slipped. There was also testimony that the plaintiff had been instructed orally and in writing to stand clear of taut cables. After the plaintiff had placed the hook, Seaborn testified the plaintiff gave him the signal to go ahead, but demonstrably the plaintiff, instead of moving toward the rear of the boxcar, a position of absolute safety, moved toward the fork truck. The cable with the hooks attached had an overall length of only 11 feet, and the plaintiff had to be within that distance of the rear of the fork truck at the moment of maximum tension to have been hit by the flying hook.

From the foregoing, it is apparent that the jury could have found that the plaintiff was guilty of negligence in placing the hook improperly and in moving from a position of safety, behind the hook, to one of danger, in front of it, which was the proximate cause of his injury, while the negligence, if any, of the Railway was not a contributing proximate cause.

■ That is not to say that there was not evidence amply sufficient to support a different conclusion, but as this Court recently said in Atlantic Coast Line R. Co. v. Truett, 4 Cir., 249 F.2d 215, 217, "Distilling the essential truth from a raw mixture of circumstances is the fact finder's function, and the jury is the instrument our system provides for this purpose." Courts are, and should be, astute not to substitute their judgment on issues of fact for that of juries when different inferences may be reasonably drawn from the evidence. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497.

■ The plaintiff also complains of the Court's reference in its charge to rules and instructions of the Railway requiring employees to stay clear of cables under tension. His complaint is that these rules and instructions did not require that the plaintiff stand clear before signaling the fork truck to move ahead. While the plaintiff testified that he had not given the signal, Seaborn testified that he had, and the plaintiff,

who had moved away after placing the hook, admitted that Seaborn understood him to have signaled the "go-ahead." The plaintiff does not contend that the charge, generally, was unfair in its reference to evidentiary matters, and we cannot find that mention of the rule and instructions given to the plaintiff was improper or inappropriate.

■ Finally, the plaintiff advances the argument that the fork truck is a "car" within the meaning of § 2 of the Safety Appliance Act, 45 U.S.C.A. § 2, which requires automatic coupling devices on cars used in moving interstate traffic. While it is well established that a locomotive is a "car" within the meaning of that section and while at least some provisions of the Safety Appliance Act apply to other trackborne equipment, Baltimore & Ohio R. Co. v. Jackson, 98 U.S.App.D.C. 169, 233 F.2d 660, we are referred to no case in which § 2 has been held to apply to railroad equipment not operable or operated on rails. The fork truck could not perform its primary function of handling material and loading and unloading cars if equipped with flanged wheels restricting it to operation over existing tracks, and, without converting it to operate only on rails, it hardly could be equipped with the known automatic coupling devices.

But the case was brought generally under the Employers' Liability Act. The pleadings framed the issues in terms of the negligence of the defendant and that of the plaintiff. At the trial the parties proceeded, without objection to develop those issues. No reference was made to the Safety Appliance Act and the District Court was given no opportunity to consider whether the fork truck might be a "car" within the meaning of § 2 of that Act. The plaintiff did request the Court to charge the jury in the language of § 3 of the Federal Employers' Liability Act (45 U.S.C.A. § 53), but took no exception when the Court, in its charge, covered the subject matter of that section, omitting reference to the "Safety Appliance" statutes. This was hardly

notice to the District Court of the contention now sought to be advanced, and, here, it comes too late.  Guegan v. New York Central R. Co., 2 Cir., 243 F.2d 524.

Affirmed.