CURTIS MACHINE COMPANY, now by merger The Carborundum Company, Plaintiff,

v.

Alfred C. MacINNES and Donald S. MacInnes, trading and doing business as MacInnes Steel Sales Company, Defendants.

Civ. A. No. 451.

United States District Court
W. D. Pennsylvania.
March 3, 1958.

Quinn, Leemhuis, Plate & Dwyer, Erie, Pa., for plaintiff.

David S. Gifford, Erie, Pa., for defendants.

WILLSON, District Judge.

In this diversity action the verdict of the jury was in favor of the defendants. At the close of all of the evidence, plaintiff moved for a directed verdict. Decision was reserved on this motion. Plaintiff has now filed timely motions under Fed.Rules Civ.Proc. rule 50, 28 U.S.C.A., for judgment in accordance with its motion for a directed verdict, and in the alternative, for a new trial.

The undisputed facts are briefly stated. In 1953, the Boeing Airplane Company was engaged in making B-52 bombers for the United States Navy. Twin Coach Company of Buffalo, New York, was a subcontractor under Boeing. Plaintiff Curtis Machine Company was a subcontractor under Twin Coach Company.

In the construction of each airplane, eight silver plated steel bolts of a certain size were required. Plaintiff had the contract to furnish 273 of these bolts. In order to bring the bolts to a certain degree of hardness, they were required to be heat-treated before the silver plating was applied. Upon inquiry by plaintiff, defendants indicated that they had the proper facilities for heat-treating the bolts. On September 9, 1953, plaintiff by writing ordered the defendants to heat-treat to proper hardness 273 bolts. Plaintiff furnished defendants with a blueprint drawing on which were set forth the specifications for heat-treating which defendants were to do. Defendants heat-treated the bolts in three separate batches. The first batch of eleven bolts was the test batch, and apparently proved satisfactory. The first lot of eleven bolts was heat-treated by defendants and returned to plaintiff on September 28, 1953. On October 6, 1953, plaintiff received from defendants 117 bolts. On November 30, 1953, plaintiff received the remaining 145 bolts. After the bolts were silver plated, according to plaintiff's allegation in its complaint, the bolts were rejected by Boeing for use in the airplanes to be manufactured, because of insufficient tensile strength due to improper heat-treatment. The issue in the case presented to the jury was whether

the bolts had been heat-treated in accordance with plaintiff's instructions as agreed to by the defendants. This issue involved the interpretation of the drawing as to what the required specifications were, as well as the fact as to whether defendants had performed the contract.

Plaintiff's claim for damages is unique in one sense, because it was to pay defendants the sum of $41.39 for heat-treating all of the bolts, but on rejection, because of the silver plating process, plaintiff claimed damages from the defendants in the sum of $3,395.22.

Plaintiff averred in its complaint that the bolts were to be heated by the defendants in accordance with the following specifications:

"Heat Treat Specifications:
Steel AN–H–201, BAC5601
AL ALLOY: AN–QQ–H–186,BAC 5602"

Defendants in their answer admitted that the specifications set forth in the complaint were those to be followed in heat-treating the bolts. In their answer, at the two pretrials and during the trial, however, defendants contended that they had complied with the contract terms.

What has been stated up to this point involves the noncontroversial issues in the case. Neither party ordered the trial testimony transcribed, so that the disputed issues of fact mentioned hereafter are simply the court's best recollection of what was said during the course of the trial.

At the bottom of the blueprint, Plaintiff's Exhibit 1, there appear in print the specifications set forth in the complaint. In the left-hand corner by pen appears the following, with reference to the heat-treatment:

"HT TO 160,000–180,000 PSI"

A reference to the Government chart AN–H–201, Plaintiff's Exhibit No. 14, and the other evidence, indicates that the heat-treating process involves the application of heat in a furnace held up to various temperatures for certain periods;

an oil quenching, so that the annealing and resulting hardening cycle produce the desired tensile strength in the steel.

The principal basis for plaintiff's motion is that Donald S. MacInnes, in charge of the work for defendants, admitted on cross-examination that he did not have and therefore did not follow the Air Force-Navy specifications AN–H–201. However, defendants' contention was that they accomplished the same result by following first the blueprint requirement to heat-treat the bolts to 160,-000–180,000 PSI, and that the process they used was in all respects equal to the specifications. Defendants said they followed the Bethlehem Steel specifications which are the "heat-treaters' Bible," and testimony of an expert for the defendants, if believed by the jury, indicated that the same results were attained by defendants' following the Bethlehem Steel specifications as though they had had and followed the specifications called for in the Government chart. It is to be noticed at this point that the expert witnesses differed as to the interpretation of the blueprint, that is, as to whether the written instructions "160,000–180,-000" were different from and superceded the specifications printed in the box at the bottom of the blueprint. It should be stressed that defendants' instructions were to be taken from the blueprint drawing. On this drawing were set forth the symbols or references to more detailed specifications in a Government chart.

Motion for Judgment N.O.V.

In considering this motion, it must be kept in mind that the verdict of the jury was for the defendants. This motion, then, presents only a question of law as to whether, when all of the evidence is considered together with all reasonable inferences in favor of the defendants, there is a total failure or lack of evidence on which the jury could base a verdict in this case. See Willits v. Yellow Cab Co., 7 Cir., 214 F.2d 612.

This is an appropriate case to point to the opinion of Judge Maris in Magee v.

General Motors Corp., 3 Cir., 213 F.2d 899, because as trial judge, when the verdict was returned, I had a rather strong impression that plaintiff under the evidence was entitled to the verdict. But in the case as it now stands, I must take the view of the evidence most favorable to the defendants. On this present motion, I am not free to reweigh the evidence or pass on the credibility of the witnesses. Further, I am not free to set aside the verdict merely because I thought at the time of the trial that the jury should have reached a different result.

Plaintiff contends that the court erred in permitting the testimony that in a telephone conversation between a representative of Curtis Machine Company and Donald MacInnes, authorization was given defendants permitting them to substitute Bethlehem Steel specifications for the written specifications shown on the blueprint. Plaintiff contends that it was error because at the pre-trial and during the trial, defendants contended they fulfilled the contract in all respects. However, on this point it should be kept in mind that the answer of the witness was brought out on cross-examination. His testimony prior to that point was that he had complied with the contract by reaching the same result as the Government specifications called for. Thus a jury question was presented.

■ From my recollection of the evidence, it is now my opinion that there was evidence for the jury which amounted to more than a scintilla favorable to the defendants' contention. I do not regard the evidence in this case as making only a "one-way" verdict reasonably possible, therefore I must decline to enter judgment notwithstanding the verdict. See Moore's Federal Practice, Vol. 5, page 2315, and Willits v. Yellow Cab Co.. supra.

Motion for New Trial.

■ On this motion the court has in mind the rules that when there is a conflict in the evidence, even though narrow, the case is for the jury and not the court. The court may not substitute its judgment for that of the jury on issues of fact when different inferences may reasonably be drawn from the evidence. See Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; and Dixon v. Virginia Railway Company, 4 Cir., 250 F.2d 460, at page 462. The court has in mind also that the credibility of witnesses is for the jury and that it is an invasion of the jury province to grant a new trial merely because the evidence was sharply in conflict. This court has in mind further that the verdict of the jury should not be disturbed unless it is quite clear that it has reached an erroneous result. See Moore's Federal Practice, Volume 6, page 3819.

On reflection upon the evidence, based, however, upon the court's recollection only, the conclusion is reached that because of the conflict in the evidence, the verdict should stand.

For instance, plaintiff's position that the bolts were defective was based entirely upon oral testimony. Its contention was that to examine and test a bolt was to destroy it, therefore but a spot check was made on the last two batches. But of those tested and found defective, only two pieces of one bolt were brought to court and shown to the jury. Plaintiff's testimony was that the remainder were lost or mislaid in moving its factory operations from one site to another. In this connection also, the 273 bolts were heat-treated in three batches as mentioned, 11, 117 and 145 bolts, respectively. At pretrial and before the jury, however, plaintiff claimed damages only as to 215 defective bolts. The inference was left that 58 bolts were up to specifications, but under the evidence all of the bolts of each batch were put into the heating oven at the same time, so that it should have mathematically resulted that at least 117 or 145 of the bolts would conform to the specifications, rather than 58, because if one bolt in a batch was properly heated, then all of that batch should have met the specifications. These contentions were, of course, for the jury.

Defendants argued strongly that there was a gap in plaintiff's proof on the issue of damages. Under the evidence it is believed that the jury could have found that 58 bolts were up to specifications. Such a finding might very well lead the jury to the additional conclusion that plaintiff had failed in proving by a preponderance of the evidence that the bolts were defective. By accepting the evidence that 58 of the bolts were good, consistency would no doubt require and lead to the verdict for the defendants on the whole issue of damages. In any event, the verdict reached was a permissive one under the evidence.

The motion for a new trial will be denied.