# SPOKANE & INLAND EMPIRE RAILROAD COMPANY *v.* UNITED STATES.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 136. Submitted December 15, 1915.—Decided June 5, 1916.

Exceptions from the general policy which the law embodies are to be strictly construed, and are to be so interpreted as not to destroy the remedial purpose intended.

The exception contained in § 6 of the Safety Appliance Act of March 2, 1893, as amended April 1, 1896, and March 2, 1903, exempting from its operation cars which are used upon street railways, does not exempt cars used in regular interstate traffic which are also to some extent used on street railways. Such cars are covered by the general provisions of the statute.

Cars used on an electric railway doing an interstate business on a standard gauge track according to standard railroad rules *held,* in this case, to be subject to the Safety Appliance Acts in regard to grab-irons and hand-holds, notwithstanding they were used at the terminals of the roads upon street railways.

The Safety Appliance Acts may not be violated with impunity by omitting grab-irons and hand-holds from cars because the railroad

company operating them deems the provisions of the act onerous or because it considers that it has adopted methods to protect the employees in coupling the cars that are more expedient than those required by the statute.

Whether methods substituted for grab-irons and hand-holds in coupling cars used in interstate commerce other than those prescribed by the Safety Appliance Acts offer the same, or better, or adequate protection to employees, is not a question for expert testimony.

210 Fed. Rep. 243, affirmed.

THE facts, which involve the construction of the Safety Appliance Act and its application to suburban electric Railroads, are stated in the opinion.

*Mr. Will G. Graves, Mr. F. H. Graves* and *Mr. B. H. Kizer* for plaintiff in error.

*Mr. Assistant Attorney General Underwood* and *Mr. John C. Brooke* for the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The United States brought this suit against the Railroad Company to recover penalties for fifteen alleged violations of the Safety Appliance Act. The violations consisted in hauling in interstate commerce on October 23, 1911, twelve cars which were not provided with hand-holds or grab-irons at the ends, as required by the act, and three cars which were not equipped with automatic couplers. The answer admitted that at the time named all fifteen cars had been used in interstate commerce and that three of them were not equipped with automatic couplers, but denied that the other twelve were not provided with hand-holds or grab-irons as required by the act and denied that it had in any respect violated the act because all fifteen cars were used by the company upon its line of street railway and were therefore expressly excepted from the operation of the act. A verdict and judgment against

the company on all fifteen charges was affirmed by the court below.

We briefly state the material facts. The Railroad Company operated a street railway system in Spokane, Washington, and several interurban electric lines, one of which extended from Spokane to Cœur d'Alene, Idaho, a distance of about forty miles. Over this line passenger trains composed of two or more cars were operated starting at a station near the center of Spokane and running for a mile and a quarter on the street railway tracks to the company's yards near the city limits and thence over its private right of way to Cœur d'Alene. The road was standard gauge, with rails of standard weight and the passenger trains were made up according to standard railroad rules with markers to designate the trains and were run on schedules and by train orders. Passengers traveled on tickets entitling them to ride to and from designated stations at which regular stops were made and express matter and baggage were carried on the passenger trains. The street-car business was entirely separate from that done by the interurban line, the employees of the one having nothing whatever to do with the other, and although stops were made by interurban trains within the city limits and while on the street railway tracks, they were made solely for the purpose of taking on and letting off passengers to or from stations outside the city. In addition to its passenger trains the interurban line also operated freight trains which, however, started from the company's yards and ran directly to Cœur d'Alene and did not therefore enter upon the street railway tracks.

The fifteen cars here in question were passenger cars and on the day named were used in passenger trains which were run from the station in Spokane to the city limits and thence over the company's right of way to Cœur d'Alene. Twelve of them (those which it was charged were not equipped at the ends with grab-irons or hand-

holds) were cars regularly used on the interurban lines and were rounded at the ends and equipped with radial couplers to enable the trains to make sharp turns. As the swinging of these couplers from one side to the other across the ends of the cars would break off grab-irons of the type ordinarily used on the ends of cars they were not used. It was claimed, however, that the requirements of the Safety Appliance Act with respect to hand-holds or grab-irons were in substance complied with by a different and what was asserted to be an equivalent appliance, that is, openings in the top of the buffer or sill extending across the ends of the cars just above the couplers. To support this claim the company offered testimony of experienced railroad men to the effect "that the hand-holds or grab-irons in the buffers or sills of such cars were sufficient to protect men who might be required to go between the cars in coupling or otherwise handling them, that they were sufficient to accomplish purposes intended to be accomplished by the provisions of the Safety Appliance Act requiring hand-holds or grab-irons to be placed upon the ends of cars used in interstate commerce, and that they were better than those commonly used upon cars engaged in interstate commerce." The United States objected to the introduction of the testimony and it was excluded on the ground "that it was not a question for expert testimony, but was a matter of common knowledge." During the trial, (at whose request it does not appear) the jury were taken to inspect the openings in some of the cars.

The other three cars were large street cars which were regularly used only on the street railway tracks, but which because of unusually heavy traffic on the day named were coupled together with link and pin couplers and operated as a train to Cœur d'Alene.

The assignments of error present two questions which we consider separately.

1. It is urged that error was committed in construing the Safety Appliance Act since, when correctly interpreted, the fifteen cars in question were expressly excepted from its requirements. To appreciate the contentions based upon this proposition it is necessary to recur to the text of the original act and the amendments thereto. By the act of March 2, 1893, (c. 196, 27 Stat. 531) it was made unlawful for any common carrier "to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact," (§ 2) or, "to use any car in interstate commerce that is not provided with secure grab irons or hand holds in the ends and sides of each car for greater security to men in coupling and uncoupling cars," (§ 4), with the proviso (§ 6) that the prohibitions of the act should not apply to "trains composed of four-wheel cars or to locomotives used in hauling such trains." By the act of April 1, 1896 (c. 87, 29 Stat. 85), the proviso of § 6 was amended as follows: "That nothing in this act contained shall apply to trains of four-wheel cars or to trains composed of eight-wheel standard logging cars . . . or to locomotives used in hauling such trains when such cars or locomotives are exclusively used for the transportation of logs." By the amendment of March 2, 1903 (c. 976, 32 Stat. 943) the provisions of the act relating to automatic couplers, grab-irons, etc., were extended and made applicable to "all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and in the Territories and the District of Columbia, and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith," and to the exceptions from the requirements of the original act and the Amendment of 1896 were added "trains, cars, and locomotives . . . which are used upon street railways."

The contention is that as the trains in which the fifteen cars were hauled were operated over the street railway

tracks from the station in Spokane to the yards of the company, they were "used upon street railways" and were hence expressly exempted from the requirements of the act by the amendment of 1903. This, it is said, results from the unambiguous text of the exception contained in that amendment and is from a two-fold point of view made additionally certain by the context of the act which we have quoted. The argument is that the word "used" in the amendment of 1903 excepting cars, etc., "used upon street railways" must be construed as having the same significance as the same word in the amendment making the act applicable to all cars, etc., "used on any railroad engaged in interstate commerce." From this premise it is insisted that as the latter provision has been construed as enlarging the scope of the act by causing it to embrace all cars used on interstate commerce railroads although at the particular time the cars are employed in intrastate commerce (*Southern Railway* v. *United States*, 222 U. S. 20), it must follow that the word "used" in the street railway excepting clause under consideration must have the same construction and therefore exclude from the operation of the act all cars used upon street railways, however temporary such use and however frequent or material may be their use in interstate commerce on other than street railways. Again it is urged that the judgment of the court below can be affirmed only by construing the word "used" in the exception as meaning exclusively used,—a construction which, it is said, would be wholly unwarranted in view of the amendment of 1896 excepting from the act certain cars, etc., "exclusively used for the transportation of logs" and the demonstration thereby afforded that if such a meaning had been contemplated by Congress in the amendment of 1903, the word "exclusively" would have been employed. But we think the want of merit in the contentions is clear and the unsoundness of the argument ad-

vanced to sustain them apparent. We say this because while it is conceded that the obvious purpose of Congress in enacting the law and its amendments was to secure the safety of railroad employees, and that the amendment of 1903 sought to enlarge and make that purpose more complete, yet it is insisted that the exception in the act should receive such a broad construction as would destroy the plain purpose which caused the act to be adopted. But to so treat the act would be in plain disregard of the elementary rule requiring that exceptions from a general policy which a law embodies should be strictly construed, that is, should be so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment. That the meaning contended for would be in direct conflict with this rule would seem free from doubt, since the inevitable result of sustaining the contention would be to put it in the power of a railroad by operating a train for a trifling distance over tracks within the exception to thereby secure the right thereafter to operate such train over long distances without regard to compliance with the safeguards of the statute which otherwise would be controlling. And this reasoning disposes of the contention deduced from the use of the word "exclusively" in the provision excepting cars used on logging railroads and its absence in the street railway clause, since on the face of the statute the object of both provisions was to exempt both the logging and street railway cars from the operation of the act only when used for logging on the one hand and on street railways on the other, and not to exempt them when not so used.

The suggestion is made in argument that in any event the railroad company was not liable for the penalties because of the difficulty of equipping the twelve cars with grab-irons which would not interfere with the lateral movement of the radial couplers and because the other three cars were so constructed that they could not be

provided with automatic couplers and were used only on the one day because of unusually heavy traffic. But this merely asserts that the statute may be violated with impunity if only the railroad finds its provisions onerous or deems it expedient to do so.

2. It is contended that error was committed in rejecting the testimony of experts offered by the Railroad Company as to the protection afforded to employés by the openings in the buffers at the ends of the twelve cars. Without stopping to point out the inappositeness of the many authorities cited in support of the contention, we think the court was clearly right in holding that the question was not one for experts and that the jury after hearing the testimony and inspecting the openings were competent to determine the issue, particularly in view of the full and clear instruction given on the subject concerning which no complaint is made.

*Affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of this case.