**BUDGE MANUFACTURING CO., Inc.,**
Appellant,

v.

**UNITED STATES of America.**

**No. 13214.**

United States Court of Appeals
Third Circuit.

Argued June 21, 1960.

Decided July 27, 1960.

Joseph Matusow, Philadelphia, Pa. (Samuel J. Marks, Philadelphia, Pa., on the brief), for appellant.

Douglas A. Kahn, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., Walter E. Alessandroni, U. S. Atty., James P. Dornberger, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This suit for refund of a manufacturer's excise tax poses the question whether a jury determination that a large plastic cover is an auto accessory under the provisions of 26 U.S.C. § 3403(c) [1] can

1. "§ 3403. Tax on Automobiles, etc.

"There shall be imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold:

* * * * * * *

"(b) Other chassis and bodies, etc: * * * automobile chassis and bodies

* * * suitable for use in connection with passenger automobiles, and motorcycles * * *.

"(c) Parts or accessories (other than tires and inner tubes and other than radio and television receiving sets) for any of the articles enumerated in subsection (a) or (b), 8 per centum, except that on and after April 1, 1954, the rate

be sustained. A most serious procedural question has also been raised by the government and will be considered at length.

Plaintiff, as successor to Edwin B. Clarke, trading as Budge Manufacturing Company, instituted this action for refund of a manufacturer's excise tax in the amount of $7,121.71, covering sales for the period January 1, 1951, through April 30, 1952. The government maintained that the article manufactured by the plaintiff—a large plastic cover, 54 inches wide, 54 inches high, and during the period in question manufactured in two sizes, 5¾ yards in length and 6 yards in length—was an automobile accessory under the statute and appropriate Treasury regulations. Plaintiff took issue with this contention, and the parties stipulated to all questions except as to whether the article was or was not an auto accessory. This issue was presented to the jury which returned a verdict for the government.

The evidence as stipulated or produced at the trial indicated the following: In 1951 the plaintiff commenced production and sale of the plastic cover which was advertised as a "portable garage." It was adaptable for use in protecting automobiles from the elements and was so advertised. In many instances, the advertising also indicated that the cover had utility for other purposes, covering farm equipment, boats, and machinery. Beginning in April, 1952, a rubber crutch tip, which could be placed over the automobile radio antenna thus protecting the covering from damage, was included in some of the packages. Evidence was presented that 83 per cent of all sales were made to automotive chain stores, and the remaining sales were to miscellaneous concerns, including department stores. In this regard it was noted that automobile chain stores sell many items other than automotive accessories and

that, on the other hand, department stores sell automotive accessories. There is clear testimony that some of the covers were sold in Notions and Sporting Goods departments. The government also produced evidence that after automobiles were lengthened in 1952, plaintiff began production of yet a third size, one foot longer than the two sizes previously manufactured.

Initially, the procedural problem deserves attention. The government contends that the taxpayer is precluded from challenging the sufficiency of the evidence to support the verdict and judgment because it failed to move for a directed verdict at the trial. Taxpayer maintains that it substantially complied with Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C.[2] when it tendered its requests for charge, at the outset of the trial, including therein a request that "Under the law and the evidence in this case, your verdict must be for the plaintiff." It is difficult for us to perceive how this requested charge, made before any evidence had been tendered in the case, not renewed at the conclusion of the government's case, and whose specific denial by the court was acceded to or at least not objected to by the taxpayer, can be construed as fulfilling the requirement of Rule 50(a). As we so recently stated in Eisenberg v. Smith, 3 Cir., 263 F.2d 827, 829, certiorari denied 1959, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534:

"This request,[3] thrown in along with a considerable list of points for charge, is not, we think, a compliance with the rule as stated in section 50(a) and quoted above. It certainly gives the trial judge no hint of what the position of the party making the motion is, except that he wants the lawsuit decided in his favor. The purpose of the rule re-

---

shall be 5 per centum. * * *" 26 U. S.C. (1952 ed.) § 3403.

2. Rule 50(a) states in part, "A motion for a directed verdict shall state the specific grounds therefor."

3. The requested instruction read, "On the basis of the evidence and the applicable law, you are directed to find a verdict for the Plaintiffs."

**416**

quiring the stating of grounds is, of course, to let the trial judge and opposing counsel see what the problem is so that the decision will be the best that can he had. 5 Moore, Federal Practice ¶ 50.04, p. 2321 (2d ed. 1951). Virginia-Carolina Tie & Wood Co., Inc. v. Dunbar, 4 Cir., 1939, 106 F.2d 383, 385; Ryan Distributing Corp. v. Caley, 3 Cir., 1945, 147 F.2d 138, 140."

Analysis of the facts of the instant case indicates that not only did the taxpayer not substantially comply with Rule 50(a) but it completely failed to do so, in any particular. The request for a verdict was presented at the outset of the trial in company with other requested charges; it merely indicated that taxpayer desired the lawsuit decided in its favor, giving no hint as to its position; the request was not renewed at the end of the government's case; and finally, taxpayer failed to object to denial of this requested charge. Thus at the time the charge to the jury was presented, there was nothing to indicate to the court but that the taxpayer had abandoned this request in light of the evidence that had been presented at the trial. In any case, it was just this type of confusion that Rule 50(a) was designed to prevent, and adherence to its directive is mandatory.

Additionally, we note that there is an absence of merit to taxpayer's contention that there was evidence that established as a matter of law that the plastic cover here in question was not an automobile accessory. Both parties agree that the governing case in this field is Universal Battery Co. v. United States, 1930, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051. The Supreme Court construed a

statute and regulations that are, for the purposes of this case, identical with those before us. At page 584 of 281 U.S., at page 423 of 50 S.Ct., it was stated:

" * * * We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted." [4]

The trial court's charge [5] in this respect was completely in accord with this principle, and taxpayer concedes as much. Thus we come to the only real issue raised by the taxpayer—whether, as a matter of law, the plastic cover was not an automobile accessory. The Supreme Court has recently noted that where reasonable minds may differ as to factual issues involving tax matters, whether they be primary or ultimate findings of fact, the issues are for the triers of fact, in this case the jury. In Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 1198, 4 L.Ed. 2d 1218, it was stated:

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper

4. We do not think it significant that in Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051, the Supreme Court spoke of the article being "primarily adapted for use *in* motor vehicles * * *." (Emphasis supplied.) Rather, it would appear that the use of the preposition was merely intended to reflect the facts of that case. We do not understand the taxpayer to contend otherwise.

5. "If you find that the article manufactured by the plaintiff is equally adaptable for use as a cover for various other articles of commerce as well as automobiles, and is in fact used upon such other articles of commerce, such manufactured article is not an automobile accessory, and your verdict should be for the plaintiff."

force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact.

\*     \*     \*     \*     \*

"One consequence of this is that appellate review of determinations in this field must be quite restricted. Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue. [Citing cases.] Where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed.Rules Civ. Proc. 52(a), 28 U.S.C.A. 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746]. The rule itself applies also to factual inferences from undisputed basic facts, id., [333 U.S.] at [page] 394 [68 S.Ct. at page 541] as will on many occasions be presented in this area." 363 U.S. at pages 289, 290–291, 80 S.Ct. at pages 1198–1200.

There is little doubt that there was evidence here from which a jury could find, in accordance with the charge, that the plastic cover was not equally adapted to general use but was rather primarily adapted for use in connection with automobiles.[6] In light of the name given the plastic cover, the advertising associated

therewith, the sizes of the articles, and the sales experience, we cannot say that reasonable minds could not conclude that these covers were auto accessories.

The judgment will be affirmed.

---

**6.** No case directly on point has been cited to us nor have we found any in our research. Due to the differing factual patterns in Aran v. United States, 9 Cir., 259 F.2d 757, certiorari denied 1958, 358 U.S. 866, 79 S.Ct. 100, 3 L.Ed.2d 100, and Smith v. McDonald, 3 Cir., 1954, 214 F.2d 920, we do not feel that either is persuasive in the present context. Perhaps more closely akin on their facts are the cases that consider whether cus-tom-made seat covers are auto accessories. Three recent cases in courts of appeals have held that they were despite the fact that the material was individually tailored and manufactured for each car. Campbell v. Brown,. 5 Cir., 1957, 245 F.2d 662; Hirasuna v. McKenney, 9 Cir., 1957, 245 F.2d 98; United States v. Keeton, 4 Cir., 1956, 238 F.2d 878, certiorari denied 1957, 353 U.S. 973, 77 S.Ct. 1056, 1 L.Ed.2d 1135.