Charles B. WALKER

v.

SINCLAIR REFINING COMPANY,
Appellant.

No. 13758.

United States Court of Appeals
Third Circuit.

Argued Feb. 21, 1962.

Reargued Sept. 21, 1962.

Reargued En Banc April 4, 1963.

Decided July 18, 1963.

William C. Schultz, Jr., Philadelphia, Pa. (Mark D. Alspach, Krusen, Evans & Byrne, Philadelphia, Pa., on the brief), for appellant.

S. Gerald Litvin, Philadelphia, Pa., (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

GANEY, Circuit Judge.

The plaintiff, Charles B. Walker, brought suit in this civil action which

arose on September 14, 1957, while the vessel, S.S. Samuel L. Fuller, was docked starboard side to a pier in Houston, Texas. At the time, the vessel was taking on a cargo of oil as well as certain supplies, including clean linen. While the plaintiff was engaged in this regular off-duty operation—for which he was paid overtime—of storing clean linen, he allegedly sustained injuries in the following manner:

The plaintiff went out on the starboard deck to pick up bags of linen which were lying thereon and which he was directed to carry by the Chief Steward, to a line locker on the port side of the vessel. He had made 4–5 trips, carrying bags of linen weighing between 100–125 pounds and, on the occasion of his injury, he was carrying a bag of linen over his shoulder of approximately the same weight. He proceeded along the starboard deck to the shelter deck where there was a door over which he had to step, approximately knee high. It was then necessary to step over a pipe to his left which, likewise, was knee high, and after he crossed this, he turned right and walked 25–35 feet until he came to the forward bulkhead. Here, he turned left and went down a narrow passageway approximately 3 feet in width between the side of a freshwater tank on his left and the bulkhead on his right, until he came to a small platform. To reach the platform from the floor of the deck, the plaintiff testified he had to step up one or two steps (the record is not clear) to reach the platform which was 11¾ inches above the floor of the deck. He stepped on the part of the platform with his left foot which had a flat surface of 9 inches, the over-all length of the platform itself being 36 inches long and 22 inches wide. He then proceeded to step over two pipes, one pipe 12 inches in diameter, which was 13¼ inches above the platform, and with a 2 inch intervening space across another pipe 4 inches in diameter and 10 inches above the platform to the end of the platform, it being approximately 9 inches from the said 4 inch pipe to the end of the said platform. There was then a step

or two and then the deck floor. These two pipes ran above and across the platform from the freshwater tank on the left to the bulkhead on the right. He testified that in stepping up on the platform and then over these two pipes of varying heights above the platform, with a bag of linen weighing between 100–125 pounds on his shoulder, he "jostled" himself in the maneuver and did not remember whether his foot came down on the far end of the platform, or on the steps, or on the deck itself, except that he came down very hard and immediately felt a sharp pain in the small of his back. He rested himself in a sitting position for 15–20 minutes and when he felt a little better, he finished carrying the bags of linen to the linen locker.

The case was submitted to the jury upon the following interrogatories: 1(a) Was the defendant's ship unseaworthy?; (b) Was this unseaworthiness of the defendant's the proximate cause of the plaintiff's injury? 2(a) Was the defendant negligent?; (b) Was the defendant's negligence a cause, in whole or in part, of the plaintiff's injury?

In answering the interrogatories, the jury returned a verdict holding that the defendant, Sinclair Refining Company, was not negligent but that the vessel was unseaworthy and that it was the proximate cause of the plaintiff's injuries, and assessed damages for the plaintiff in the amount of $12,500.

The defendant filed a motion for directed verdict after the close of the plaintiff's case; it repeated the motion after all the evidence was in. Both motions were denied. After the verdict the defendant filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a limited new trial. From the denial of these motions, this appeal followed.

Since the jury here reached a verdict in favor of the plaintiff on the ground of unseaworthiness, in the review of the case every inference must be drawn in the plaintiff's favor, and, accordingly, it is in this light we must determine whether it cannot be said that

reasonable men could reach differing conclusions on the issue of unseaworthiness. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 290–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Budge Manufacturing Co. v. United States, 280 F.2d 414, 417 (C.A. 3, 1960).

It has long been the settled rule in admiralty that a vessel and its owner are liable to indemnify a seaman for injury caused by the unseaworthiness of a vessel or by a failure to supply and keep in order the proper appliances and appurtenances to the ship. The Osceola, 187 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. While the ship and her owners are not insurers of the safety of seamen working on board, it is sufficient if she is reasonably fit for the purposes intended. Boudoin v. Lykes Brothers S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354; Poignant v. United States, 2 Cir., 225 F.2d 595; Doucette v. Vincent, 1 Cir., 194 F.2d 834. The rationale of this doctrine is that seaworthiness of the ship, her equipment and appurtenances, is a relative concept depending in each instance upon the circumstances upon which her fitness is related to. As was said in Lester v. United States, 2 Cir., 234 F.2d 625, 628, the crucial consideration is whether the ship was, in all respects pertinent to the injury, reasonably fit to permit plaintiff to perform his task aboard the ship with reasonable safety. Accordingly, the question poses itself as to whether reasonable minds could differ in concluding that the platform, in the narrow passageway in which it was located, was seaworthy or not. We hold that reasonable minds could differ in concluding that the platform was unseaworthy, and that the question was properly submitted to the jury under an interrogatory by the learned trial judge.

The complaint, besides alleging an unsafe place to work and failing to keep and maintain the vessel, especially the decks and passageways in a seaworthy condition, alleged, among other things, "(e) failing to provide plaintiff with proper assistance;" and "(f) ordering plaintiff to perform himself duties which required at least 2 or 3 men for the proper performance thereof;". Therefore, considering the pleadings and the testimony of record, the concept of unseaworthiness does not, in our instance, of necessity embrace within it the like concept of "an unsafe place to work" upon which an allegation of negligence could be predicated—the doing or failure to do something which a reasonably prudent person would do or would not do under like circumstances. Here, the jury could find, and so did, that the defendant was not negligent in that (1) they believed the plaintiff alone could carry the load of laundry on his back without assistance from other crewmen; (2) that there was nothing in the lighting arrangements about the platform on which he was injured which could be considered insufficient; and (3) that, in his fall, the plaintiff did not slip or trip, as he expressly testified, on the steps of the platform or in crossing over the pipes, for there was nothing thereon, such as grease or oil, which might have been a basis for the defendant's negligence. However, they could find, and they so did, that the defendant maintained an unseaworthy vessel in that the platform and pipes crossing above it were permanent appendages of the ship and that their design and construction, by reason of the narrowness of the platform and the varying heights of the pipes above it, caused him to be "jostled" in stepping over them onto the back part of the platform or the deck floor itself.

In Mesle v. Kea Steamship Corp., 3 Cir., 260 F.2d 747, Judge McLaughlin makes an exhaustive review of the authorities in personal injury cases and comes to the conclusion that unseaworthiness may be divided into two categories. The first being where the shipowner, having knowledge, actual or constructive, that certain activity will occur, is imposed with an absolute duty of supplying equipment for permitting the conduct and accomplishment in reasonable safety of that activity; liability is im-

posed for failure to comply with this duty, termed one of making the vessel seaworthy. Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 49 S.Ct. 475, 66 L.Ed. 927; Halecki v. United New York and New Jersey Sandy Hook Pilots Association, 2 Cir., 251 F.2d 708. The other category is where the equipment supplied by the owner for doing the ship's work proves incapable of performing its function in the manner for which it was designed. Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. It is apparent here that the incident involved comes within the first category of this general definition.

While the plaintiff did not trip or fall over the pipes, nor was there any transitory unsafe condition causing his injuries, as obtained in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941, nevertheless here was a permanent fixture, an appurtenance of the ship, requiring in the design of the platform, that a seaman carrying these heavy bags of linen step over pipes, as has been indicated, of varying heights, thus creating a hazard, the causative factor which the jury could find under proper instructions, was an unseaworthy condition of the ship.

■ While there was no expert testimony offered to show that a ramp or a covering from the platform over the pipes 13¼ inches and 10 inches above the platform, might have been constructed by way of protection to the user, it is unnecessary, where there is no complexity to the design or construction of an appurtenance to a ship, that an expert in marine design be called. Spokane & Inland Empire R. R. Co. v. United States, 241 U.S. 344, 351, 36 S.Ct. 668, 60 L.Ed. 1037; Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313; Martin v. United Fruit Co., 2 Cir., 272 F.2d 347; Fatovic v. Nederlandsch-Ameridaansche Stoomvart, Maatschappij, 2 Cir., 275 F.2d 188. In the case before us, it was obvious to one of ordinary intelligence, by looking at the exhibits which the jury had before it, that a seaman carrying this load on his shoulder and by reason of the design and construction of the platform and steps with the varying height of the pipes in making this difficult step, could, in the maneuver, cause him to "jostle" himself and thus receive the injuries of which he complains.

■ There is an additional factor here which weighs heavily against the defendant's contention and which, in and of itself, precludes the defendant from asking for a reversal of the lower court's judgment for the reason that the alleged contradiction in the jury's verdict was never argued before the trial judge nor was it argued before this court, but was raised for the first time by a dissenting judge. This court has but recently held that a trial court should not be reversed on grounds which were never urged or argued in the court below. Roberts v. United States and Union Carbide Corp., 3 Cir., 316 F.2d 489 (1963); Mutual Benefit Health & Accident Association v. Francis, 8 Cir., 148 F.2d 590; Boeing Airplane Co. v. Brown, 9 Cir., 291 F.2d 310; Burke v. Lincoln Transit Co., 1955, 37 N.J.Super. 433, 117 A.2d 521. For this reason and for the additional reason, within the orbit of our review, the jury could find that this appurtenance created an unseaworthy condition which was the proximate cause of the plaintiff's injury.

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge, with whom HASTIE and WILLIAM F. SMITH, Circuit Judges, join (dissenting).

I would reverse for the reason that the answers of the jury to the interrogatories are so completely inconsistent and contradictory that they do not support the judgment entered by direction of the District Court in favor of the plaintiff.

Plaintiff's complaint alleged that the defendant was negligent and its vessel was unseaworthy. The complaint of un-

seaworthiness was premised on plaintiff's contention that the platform in the passageway leading to the linen room was so constructed, that it, and the pipes atop of it, constituted a hazardous condition. The complaint of negligence was also premised on plaintiff's contention that the platform was a foreseeable hazard to those who had to traverse it, and created an unsafe place to work; other allegations of negligence were that the defendant had ordered plaintiff, unassisted, to perform tasks "which required at least 2 or 3 men"; that defendant had "improperly" ordered "plaintiff to perform unnecessarily dangerous duties"; and that defendant had failed "to provide prompt and adequate medical care and attention and maintenance for the alleviation and cure of plaintiff's injuries."

The trial judge gave careful and adequate instructions to the jury with respect to the unseaworthiness and negligence issues. With respect to the role played by the platform in the unseaworthiness phase of the case he charged that if the platform were so constructed that it did not permit the conduct of normal shipboard activities, such as the carrying of linen, with "reasonable safety", the vessel was unseaworthy. With respect to the role played by the platform in the negligence phase of the case the jury was instructed that the defendant was under a duty to provide the plaintiff with a safe place to work and that if the platform was not "reasonably safe" and was not such a platform as a reasonable, prudent person would maintain under the circumstances, knowing that it was there for passage afoot * * * you could find the defendant negligent in maintaining that platform." [1]

The jury's answer of "No" to interrogatory 2(a) "Was the defendant negligent?" can only be construed as a finding [2] that the platform was *reasonably safe* for the purpose for which it was used by the plaintiff, and its answer of "Yes" to interrogatory 1(a) "Was defendant's ship unseaworthy?" can only be construed as a finding that the platform *was not reasonably safe* for the use to which it was put by the plaintiff.

There is no possible "view of the case" [3] which would permit a reconciliation of the inconsistent and contradictory findings of the jury here.

The inconsistency of the jury's answers "construed in the light of, and in connection with, the pleadings, instructions, the issues or questions submitted" [4] cannot support the judgment entered by the court below.[5]

1. The trial judge also submitted to the jury the contentions that defendant was negligent "in asking the plaintiff to do this work without assistance * * * and * * * in actually failing to assign him assistants." (N.T. p. 509) He did not charge with respect to the complaint's allegation of negligent failure to provide "prompt and adequate medical care" since no evidence had been adduced on that score and the plaintiff in his "Requests for Charge" had not even adverted to it.

2. The answer of "No" to the interrogatory relating to negligence also embraced the issue of the failure to give plaintiff adequate assistance in carrying the linen bags. It may be noted parenthetically that plaintiff limited his "Requests for Charge" on the score of negligence to these points: "creating or maintaining any hose, line, platform or other such obstruction which may have constituted an unsafe place to work * * *" and * * * ordering, requesting or permitting "plaintiff to carry the bags of linen * * * without providing him with assistance."

3. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

4. Martin v. Swift, 258 F.2d 797, 799 (3 Cir. 1958); Halprin v. Mora, 231 F.2d 197, 201 (3 Cir. 1956). To the same effect see Missouri Pacific Railroad Company v. Salazar, 254 F.2d 847 (5 Cir. 1958).

5. The jury here did not return a general verdict in favor of the plaintiff. The trial judge ordered judgment in favor of the plaintiff "in accordance with the jury's answers to questions submitted." These questions related only to the issues of unseaworthiness and negligence of the defendant and contributory negligence on

Rule 49(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides in relevant part:

"When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall *not* direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial." (emphasis supplied).

In Welch v. Bauer, 186 F.2d 1002 (5 Cir. 1951) it was held that under Rule 49(b) the trial judge *cannot* enter a judgment based on a jury finding in answer to a special interrogatory where that finding is inconsistent with an answer to another interrogatory. In so ruling, this Court said (186 F.2d p. 1004):

"The answer to the special issue is completely inconsistent with the general verdict. This being so, this is a case in which, under Rule 49, Fed.Rules Civ.Proc. 28 U.S.C.A. the answer to the special issue being inconsistent with the general verdict, the court could not enter a judgment on it, but must either return the case to the jury for further consideration of its answers, or grant a new trial. Since he did not return the case to the jury he should have ordered a new trial."

In 5 Moore, Federal Practice ¶49.04, at 2211–2212 (2d ed. 1951), it is said with respect to the force of Rule 49(b):

"Of course, if the answers are inconsistent with each other, and one or more with the general verdict, the court *cannot* enter judgment upon the basis of any of the findings, and as provided by the Rule, *should not direct the entry of judgment at all,* but should return the jury for fur-

ther deliberation or should order a new trial." (emphasis supplied)

It should be noted at this point that Rule 49(b) has been amended, effective July 1, 1963, to provide that "judgment *shall not* be entered", when the answers to written interrogatories are inconsistent, in substitution for the prior provision that "the court *shall not* direct the entry of judgment." The purpose of the amendment was to make it clear beyond cavil that judgments are invalid when entered on inconsistent answers. Rule 49(b) as now amended provides that when inconsistent answers are given the trial court "*shall* return the jury for further consideration of its answers and verdict or *shall* order a new trial." The word "*shall*" was in substitution for the word "*may*". (emphasis supplied)

The impact of Rule 49(b) even in its state prior to July 1, 1963, was to make the judgment directed by the trial judge in the instant case invalid. That being so, it is immaterial that the question of the invalidity of the judgment was not raised in the trial court or here.

Although I do not deem it to be material, in view of what has been said, it should be observed that the majority's view that the issue of inconsistent answers cannot be considered on this appeal because it was "never urged or argued in the court below" is not supported by the cases which it has cited.[6] In all of these cases it was merely held that a trial judge's rulings on evidence cannot be challenged on appeal when they were not urged in the trial court. In not one of the cases was there present the circumstances of inconsistent answers.

Again, it may be pointed out that in Thorp v. American Aviation and General Insurance Company, 3 Cir., 212 F.2d 821 (1954) we observed (212 F.2d p. 825)

---

the part of plaintiff. In response to the question "Irrespective of your answers to 1, 2 and 3, state, in dollars, the total amount of damages suffered by the plaintiff," the jury answered "$12,500.00."

6. Roberts v. United States and Union Carbide Corp., 316 F.2d 489, 497 (3 Cir.

1963); Mutual Benefit Health & Accident Association v. Francis, 148 F.2d 590 (8 Cir. 1945); Boeing Airplane Co. v. Brown, 291 F.2d 310 (9 Cir. 1961); Burke v. Lincoln Transit Co., 37 N.J. Super. 433, 117 A.2d 521 (1955).

"there may be exceptional cases which will prompt an appellate court to consider grounds of error not raised below * * * where injustice might otherwise result."

In the instant case even independent of the compelling impact of Rule 49(b), it is clear that the trial judge's error in entering judgment on the jury's inconsistent answers was so fundamental in nature as to require this court's consideration and reversal even though not urged below.

For the reasons stated I would reverse the judgment of the court below with directions to grant a new trial.