William BROGAN, Plaintiff,

v.

UNITED NEW YORK SANDY HOOK PILOTS' ASSOCIATION, INC., and United New Jersey Sandy Hook Pilots' Association, Inc., Evergreen Marine Corporation, Evergreen Marine Corporation, Taiwan, Ltd., Evergreen International, S.A., and the M/V Ever Decent, her engines, appurtenances, etc., Defendants.

No. Civ.A. 00–6262(JAG).

United States District Court, D. New Jersey.

April 12, 2002.

Paul Hoffman, Cappiello, Hofmann & Katz, New York City, for plaintiff.

James E. Mercante, Rubin, Fiorella & Friedman, LLP, New York City, for defendants, United New York Sandy Hook Pilots' Association, Inc. and United New Jersey Sandy Hook Pilots' Association, Inc.

Paul Keane, Stephen H. Vengrow, Cichanowicz, Callan, Keane, Vengrow & Textor, LLP, New York City, for defendants, Evergreen Marine Corp., Evergreen Marine Corp., Taiwan Ltd., and Evergreen International, S.A.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motion of Defendants United New York and New Jersey Sandy Hook Pilots' Association's (hereinafter, "Defendants") motion for summary judgment.[1] Plaintiff William Brogan ("Brogan"), a deckhand employed by Sandy Hook, claims to have been injured on September 25, 1999, while climbing a pilot ladder alongside the Evergreen defendants' ship, "M/V Ever Decent."[2]

---

**1.** Defendants raise, as part of their motion for summary judgment, a claim for exoneration from or limitation of liability, pursuant to the Limitation of Liability Act of 1851. "The determination of whether a shipowner is entitled to a limitation of liability requires the court to engage in a two step inquiry. First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Next, the court must determine whether the owner of the vessel had 'knowledge or privity' of the acts of negligence or conditions of unseaworthiness." *In the Matter of Munyan*, 1992 WL 13196, *2 (D.N.J.1992) (quoting *In re Complaint of Cirigliano*, 708 F.Supp. 101, 103 (D.N.J.1989)). As discussed more fully within, this Court finds that Plaintiff has proffered sufficient evidence to create a triable issue of fact as to Sandy Hook's negligence—the first element of a limit of liability claim. Accordingly, summary judgment on Defendants' limit of liability claim is inappropriate. *Munyan*, 1992 WL 13196, *2 (where a reasonable fact finder could find that limit of liability petitioner was negligent, petitioner's motion for summary judgment was denied).

**2.** Brogan also claims to have aggravated his injuries from the September 25, 1999 incident while steering Sandy Hooks' motorboat "Trenton" on December 14, 1999. (Compl. ¶ 14; Pl.'s Opp. at 9.) For the purposes of the instant motion, however, Plaintiff is not relying upon the December 14, 1999 incident as a basis for his negligence and unseaworthiness claims. (Tr. at 32.) ("Tr." refers to the oral argument before this Court on March 6, 2002.) This Court limits its analysis to the facts surrounding the September 25, 1999 incident.

## GENERAL FACTS

Sandy Hook is a corporation providing state pilotage services for ocean-going ships which are either entering or departing the Port of New York and New Jersey. Pilots board and disembark vessels at the entrance to the New York harbor. Pilots on duty use station boats, one of two boats which remain at the entrance year round, as their floating base of operations. The pilots are transported between the station boat and the ship to be piloted by one of Sandy Hook's motorboats, such as the motorboat "Trenton." When ocean-going ships needing Sandy Hook's assistance approach New York harbor, they radio to the Sandy Hook pilots that they are in the vicinity and wish to be boarded by a pilot to guide them into the harbor. When the ship is between one-half to one mile from the station boat, a pilot will board a motor launch, operated by a boat operator and a deck hand, and travel to meet the incoming ship.

Plaintiff holds various licenses in boat handling and has over twenty years experience in the Port of New York (part of that time in the United States Coast Guard). Plaintiff began work for Sandy Hook as a deckhand on February 24, 1999. The deckhand's duties include assisting the pilots in safely boarding or coming off a ship, and assisting the pilot with any bag(s) he has to bring aboard the ship. Once the motorboat reaches the ship, the pilot grabs onto the pilot ladder (often a rope ladder with wooden or plastic rungs), and climbs up it aboard the ship. These boardings are often done while the ship and motorboat are moving. Once the pilot is safely aboard the ship, it is custom and practice for the deckhand to pass the bag to the ship by attaching the pilot's bag to a heaving line (kept at the boarding gate of the ship being boarded). The heaving line is lowered by the ship's crew, the pilot's bag is tied to the line, and the bag is pulled up by the ship's crew.

### The September 25, 1999 incident

On September 25, 1999, Plaintiff was assisting with the pilot transfer from the motorboat "Trenton" to the ocean-going ship "M/V Ever Decent," owned by co-defendant, Evergreen. On the motorboat with Brogan were Bruce Punger (the pilot), and Elizabeth Marks (now Elizabeth Miller) (boat operator). Brogan testified that after assisting Punger in climbing the pilot ladder supplied by the Ever Decent, he requested that the heaving line be lowered from the ship so that he could attach Punger's bag. Not long after Punger had disappeared into the boarding area, a crewman from the Ever Decent informed Brogan that he did not have a heaving line. In a bit of a quandary, Brogan decided to climb up the pilot ladder himself to deliver the bag. Brogan thus proceeded up the ladder—allegedly basing his decision on the following: (1) it was his responsibility to get the bag to Punger; (2) the ship had already started to change its course, and the motorboat was having trouble staying even with the ship; (3) fear that if he failed to get the bag to Punger, he would be subjected to discipline or loss of job; and (4) Brogan could think of no other way to move quickly to get the bag aboard the ship. When Brogan got as far as the steel platform which extended out of the side of the ship, the crewman reached down to grab the bag from Brogan. Brogan claims that when he removed one hand from the ladder to give the crewman Punger's bag, the ladder twisted, turning "fore to aft," and caused him to hit his neck and shoulder on the platform. Later that day, Brogan reported to the station boat captain that he had "strained his arm" while climbing the pilot's ladder. Actually, Brogan had suffered a herniated disc as a result of the impact against the ship. He underwent cervical vertebral fusion surgery to help correct the condition. Although Brogan seeks maintenance, cure, and wages in

his Complaint, in the instant motion, Defendants only move for summary judgment on Plaintiff's Jones Act negligence and unseaworthiness claims.

## STANDARD OF LAW

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990). In determining whether there are any issues of material fact, this Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences—including on issues of credibility—in favor of the nonmoving party. *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir.1997); *Watts v. Univ. of Del.,* 622 F.2d 47, 50 (3d Cir.1980).

## ANALYSIS

### Jones Act negligence claim[3]

The elements of a Jones Act negligence claim are: duty, breach of duty, notice and causation. A seaman is entitled to recovery under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury. *Ribitzki v. Canmar Reading & Bates, Ltd.,* 111 F.3d 658, 662 (9th Cir.1997). Before availing himself of the rights provided by the Jones Act, a claimant must establish an employment relationship, either with the owner of the vessel or with some other employer who assigns the employee to a task creating the proper connection with a vessel. *Guidry v. South Louisiana Contractors, Inc.,* 614 F.2d 447, 452 (5th Cir.1980). In the instant matter, there is no dispute that at the time the events at issue occurred, Brogan was employed by Defendants. Thus, this Court will examine whether a genuine issue as to a material fact exists regarding Plaintiff's Jones Act negligence claim.

---

**3.** To the extent that Plaintiff attempts to introduce additional case law on the issue of Defendants' negligence, after the submission of briefing papers and oral argument before this Court, this Court disregards them. Local Civil Rule 7.1. *See Cooper v. Cape May County Board of Social Services,* 175 F.Supp.2d 732, 742 (D.N.J.2001) (refusing to consider plaintiff's letter supplementing his original opposition brief where he neither requested nor received permission from the court beforehand).

### 1. Sandy Hook's Duty to Brogan

The employer of a seaman owes the seaman a duty under the Jones Act to provide the seaman with a safe place to work. *Ribitzki*, 111 F.3d at 662. A seaman may often be sent off ship to perform duties of his employment; thus, a Jones Act employer's liability for injuries occurring off the ship are not precluded. *Braen v. Pfeifer Oil Transp. Co., Inc.*, 361 U.S. 129, 132, 80 S.Ct. 247, 4 L.Ed.2d 191 (1959). Defendants claim that they cannot be held negligent for any injuries occurring on the Ever Decent, as they did not own, maintain or exercise any control over the ship. However, at least one Circuit (the Ninth Circuit) has held that an employer's duties under the Jones Act "extend[ ] to providing a safe place to work on the ship of a third party over whom the employer has no control, if that is where the seaman's employer sends him to work." *Ribitzki*, 111 F.3d at 662. That court noted that because "it is undisputed that [plaintiff] was a seaman employed by [defendant], and that [defendant] sent [plaintiff] to work aboard the [vessel where the incident occurred]," defendant's duties to provide a safe place of work extended to that vessel *Id.*

Accordingly, this Court must determine if there is a triable issue as to whether Sandy Hook *sent* Brogan to work aboard the Ever Decent, to the extent that the pilot's ladder constitutes being "aboard" the Ever Decent. Although the parties do not dispute that Brogan's responsibilities did not normally entail his going aboard the ship, "the defendant's duty is [also] measured by what a reasonably prudent person would anticipate or foresee resulting from particular circumstances." *Wilburn v. Maritrans GP, Inc.*, 139 F.3d 350, 357 (3d Cir.1998). Brogan insists that it was foreseeable that he might be faced with the need to perform his responsibility of getting the pilot's bag onto a ship where

that ship did not have a heaving line, and that he might, as a consequence, need to climb aboard the pilot's ladder in order to accomplish his responsibility. Defendants, on the other hand, maintain that Brogan was fully trained and capable of performing the responsibilities of a deckhand, which, they emphasize, did not, under any circumstances, include climbing the pilot ladder.

There is no dispute that Brogan's responsibilities included getting the *bag* aboard the Ever Decent, and required that he be alongside the ship and use equipment from the ship (the heaving line), and even that he manipulate the pilot's ladder in order to ensure that the pilot safely boarded the ship. A reasonable jury might therefore find that Sandy Hook sent Brogan alongside the Ever Decent, such that its duty extended to preventing the injuries Brogan sustained on the pilot's ladder. A reasonable jury might also find that Sandy Hook had a duty to ensure that Brogan was properly trained as to how to perform his responsibilities safely in the foreseeable instance that no heaving line was made available. Accordingly, this Court finds that a genuine issue of fact exists as to whether Sandy Hook owed Brogan a duty under these circumstances.

### 2. Breach

Brogan claims that Sandy Hook breached its duty by failing to either 1) provide Brogan with safe access to the boarding port of the Ever Decent; or 2) properly train Brogan as to a safe method of performing his responsibilities should no heaving line be provided. Sandy Hook, again, insists that Brogan was properly trained for his duties, which did not include climbing the pilot's ladder. This Court finds that a reasonable jury could find that Sandy Hook breached its duty to provide Brogan a safe place to work by

sending Brogan to perform his responsibilities without ensuring that proper and safe equipment was available for his use, or in training him on the proper procedure if such equipment was not available.

### 3. Notice

To be sure, negligence requires the defendant to guard against only those risks or dangers of which it knew, or by the exercise of due care, should have known. *Id.* Brogan argues that Punger and Marks "knew or should have known that no heaving line had been sent down to assist Mr. Brogan." (Pl's Opp. at 14.) Sandy Hook could be charged with constructive notice if, in the exercise of reasonable care, Sandy Hook ought to have known about or discovered the absence of a heaving line on the Evergreen ship. *Ribitzki*, 111 F.3d at 663. ("a duty of reasonable inspection ... extends to an employer who sends employees to work aboard a third party's vessel.") Certainly, it is possible that Sandy Hook could have, in exercising due care, discovered the absence of a heaving line aboard the Ever Decent at the same time that the ship contacted Sandy Hook and requested pilotage services. This Court concludes that a reasonable jury could find that Sandy Hook was on constructive notice as it ought to have known that the Ever Decent did not have the equipment necessary for Brogan to get Punger's bag onto the ship safely—particularly if that jury also determined that the pilot's ladder was encompassed in the area where Plaintiff was *sent* to do his work.

### 4. Causation

The standard of proof for causation is relaxed in cases filed pursuant to the Jones Act. The Third Circuit, in *Wilburn*, 139 F.3d at 357, held that "[c]ausation is satisfied if 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury ...'" (citing *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493, (1957)). "This test, often described as a featherweight causation standard, allows a seaman to survive summary judgment by presenting even the slightest proof of causation." *Ribitzki*, 111 F.3d at 664.

Brogan has already come forward with sufficient evidence to create at least triable issues of fact on the elements of duty, breach and notice. As to whether Sandy Hook's allegedly negligent acts played even the slightest part in causing Brogan's injuries, this Court finds that Brogan has also proffered a triable issue of fact that they did. *See id.* Of course, Sandy Hook asserts that Brogan's own unsanctioned decision to climb aboard the pilot's ladder, a task he had never before performed pursuant to his deckhand responsibilities, was the sole proximate cause of his injuries. Brogan counters that Sandy Hook caused his injuries by failing to ensure that he could safely perform his responsibilities.

Although a plaintiff injured entirely by his own negligence cannot recover under the Jones Act, *McClendon v. OMI Offshore Marine Serv.*, 807 F.Supp. 1266 (E.D.Tex.1992), "[s]o long as the employer's negligence played some part in [plaintiff's] injury, it does not matter in ruling on a motion for summary judgment that a jury upon hearing [plaintiff's] case might also attribute his injury to other causes, including his contributory negligence." *Ribitzki*, 111 F.3d at 664. A reasonable jury could find that but for Sandy Hook's failure to ensure that 1) Brogan would be provided the equipment necessary for him to perform his responsibilities safely, and/or 2) Brogan was trained in the proper procedures should he not be provided that equipment, Brogan would not have resorted to an alternative method of climbing the pilot's ladder in order to get Punger's bag

aboard the Ever Decent, thereby injuring himself. This Court therefore finds that there is a triable issue of fact as to whether Sandy Hook's allegedly negligent acts "played any part, even the slightest," in producing Brogan's injuries. As a result, Defendants' motion seeking summary judgment based on the conclusion that Brogan was the sole proximate cause of his injury is denied. *Id.*

This Court concludes that Brogan has presented sufficient evidence to survive summary judgment on his Jones Act negligence claim against Sandy Hook. Defendants' motion on Plaintiff's negligence claim is therefore denied.

**Unseaworthiness**

■ Under the admiralty doctrine of warranty of seaworthiness, the owner of a vessel traditionally is absolutely liable for any injury sustained by a crew member in the course of his employment. The Supreme Court has made clear that the owner's duty to furnish a seaworthy ship is absolute. *Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). This duty is also "independent of [an owner-employer's] duty under the Jones Act to exercise reasonable care." *Id.* Pursuant to this duty, an owner must only "furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Id.* at 550, 80 S.Ct. 926. As such, the crucial consideration is whether the ship was, in all respects pertinent to the injury, reasonably fit to permit plaintiff to perform his task aboard the ship with reasonable safety. *Walker v. Sinclair Refining Co.,* 320 F.2d 302 (3d Cir.1963).

■ However, because the idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the *vessel,* the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel. *Daniels v. Florida Power & Light Co.,* 317 F.2d 41, 43 (5th Cir.1963). It is undisputed that, pursuant to the custom and practice, a heaving line is provided by the ship to be boarded, as opposed to the motorboat. As such, Sandy Hook may not be held liable for the unseaworthiness of the Evergreen ship to the extent that Brogan was not supplied with a heaving line. In fact, Sandy Hook may only be held liable to the extent that the Trenton was not "reasonably fit for its intended use."

■ Included in this warranty of seaworthiness is a provision for a seaworthy crew. *See e.g., Rogers v. Eagle Offshore Drilling Services, Inc.,* 764 F.2d 300, 303 (5th Cir.1985) (citing *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971) ("A vessel's condition of unseaworthiness might arise from any number of circumstances. Her gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The method of loading her cargo or the manner of its stowage might be improper.") ) Thus, Sandy Hook's duty may be breached by providing an inadequate or improperly trained crew.[4] Brogan asserts that Marks failed to ensure that he was provided with

---

**4.** Brogan does not allege that the method of unloading the pilot's bag, as sanctioned by Sandy Hook, was generally improper. Nor does Brogan contend that the Trenton was insufficiently manned, that any of its appurtenances malfunctioned, or that its gear was defective. The parties acknowledge that the heaving line was to be provided by the ship to be boarded (the Ever Decent), and not the motorboat (the Trenton). (Pl.'s Opp. at 4; Defs.' Mem. at 2.)

a heaving line and a pennant to secure the pilot ladder. (Brogan Aff. ¶ 14.) Although a single incident of negligence is certainly not conclusive evidence of crew incompetence, such evidence is probative. *See In the Matter of Potomac Transport, Inc.,* 909 F.2d 42, 47 (2d Cir.1990). Therefore, this Court's conclusions regarding evidence of Sandy Hook's negligence do not mandate a similar finding with regard to the unseaworthiness of the Trenton.

Nonetheless, this Court concludes that Brogan has failed to proffer sufficient evidence that Punger and Marks were so improperly trained on September 25, 1999, that the Trenton could be deemed unseaworthy. To the contrary, Brogan admitted at his deposition that the Trenton was in fact "fit for its intended purpose." [5]

Accordingly, this Court finds that no genuine issue as to any material fact exists with regard to the unseaworthiness of the Trenton. Defendants' motion for summary judgment on the unseaworthiness claim is granted.

## CONCLUSION

For the reasons stated above, this Court DENIES Defendants' summary judgment motion on the issue of negligence and GRANTS Defendants' summary judgment motion on the issue of unseaworthiness.

---

5. The full excerpt of testimony from Brogan's deposition is as follows:

Q: Now when you boarded from the motorboat, was there anything on the motorboat any of its equipment, that was a factor in that accident?
R: No.
Q: So the motorboat for that purpose was fit for its intended purpose?
R: Yes.

(Edward Kenny Aff., Ex. 2., at 110–111.) Parenthetically, Plaintiff raises no issue of confusion or a lack of understanding of the term of art "fit for its intended purpose" either during his deposition or in his papers in opposition to Defendants' motion.